EMMA C. BARRETT, APPELLANT, v. SELDEN-BRECK CONSTRUCTION COMPANY, APPELLEE.

FILED NOVEMBER 15, 1919.   No. 21061.

1. **Master and Servant:** INDEPENDENT CONTRACTOR. The right to supervise, control, and direct the work is one of the tests for determining whether a person is an independent contractor or an employee, but it is not the sole and only test.

2. ———: ———: WORKMEN'S COMPENSATION ACT. One who takes contracts for cleaning and pointing the walls of brick buildings, agreeing to furnish his own tools, scaffolding, and material, to employ his own help, keep his own time, to furnish workmen's compensation insurance for the workers whom he employs, who is under no obligation to do the work in person, who is paid on weekly estimate 50 per cent. of the value of the work done, the balance being reserved until the completion or acceptance of the work, is an independent contractor, and not an employee, under the workmen's compensation act.

APPEAL from the district court for Douglas county: ALEXANDER C. TROUP, JUDGE. *Affirmed.*

*John M. Berger* and *J. C. Kinsler*, for appellant.

*Smith, Schall & Howell, contra.*

LETTON, J.

This is an appeal from a judgment of the district court dismissing an award made by the compensation commissioner to plaintiff on account of the death of her husband. The district court found: "That at the time of receiving the injuries resulting in his death, the said Albert J. Barrett was a subcontractor under the Selden-Breck Construction Company, appellant herein, and was an independent contractor with the said Selden-Breck Construction Company * * * in the construction of the building upon which the said Albert J. Barrett was working at the time the injuries were received by him which resulted in his death."

Selden-Breck Construction Company was engaged in constructing a large brick building in Omaha, known as the Conant Hotel, or Wolf-Hiller building.

At the time the accident occurred, Barrett was washing down the building and pointing up the joints. He was assisted by a workman whom he employed. The men were standing upon a scaffold which was attached to the building by ropes and pulleys. The scaffold was about 16 feet long, and the manner of doing the work was to start upon the top of the building and wash down a section the width of the scaffold, or about 16

and fell to the street. The vice-president and general manager of the company testified that, prior to the construction of this building, Mr. Barrett had the contract for the washing down and pointing of the outside brick walls of the building when it was practically completed, and produced the following letter:

"March 29th, 1918.

"Re Wolf-Hiller Building.

"Mr. A. J. Barrett, 649 Franklin Avenue, Council Bluffs, Iowa.

"Dear Sir: We hereby accept your verbal proposition to clean down all the brickwork and clean and point all the stone and terra cotta work in the Conant Hotel building, 16th & Harney streets, Omaha, Nebraska, for the sum of four hundred and no/100 ($400) dollars. Work to be started at once and to be carried forward as rapidly as conditions will permit. Payment to be made each week covering 50 per cent. of the value of the work completed that week.

"You hereby agree during the continuance of the work done by you under this contract, also extra work in connection therewith, to maintain liability and workmen's compensation insurance in a sufficient amount to protect you and us from any liability or damage on account of injuries suffered by any of your employees, including any liability or damage which may arise by virtue of any statute now in force or which may hereafter be enacted.

"This letter with your signature attached below shall constitute a contract between us, it being understood that you will not sublet or assign any portion of the work without our written consent.

"Yours very truly,

"SELDEN-BRECK CONSTRUCTION CO.,

"By C. R. VAUGHN.

"Accepted by A. J. BARRETT."

Barrett furnished the scaffolding, ropes, pulleys, tools, and material, such as mortar, acid and water for the

work. When help was necessary, he employed and paid for it himself. The words "extra work" used in the contract meant cleaning and pointing a larger portion of the walls of the building than described in the specifications, and if it was necessary to remove or replace a part of the cornice, or broken brick or stonework, this was also "extra work."

The superintendent of the brickwork upon the building testified that it was his duty to oversee the work, including cleaning and pointing of the walls. The witness testified that, if he saw that Barrett was doing a "streaky job," he would call his attention to it, that he had no authority to make him do it over, it would be left to the architect, but it would have to be satisfactory before the work would be accepted. He also testified that if Barrett had replaced brick, or done other extra work of that nature, the superintendent would inspect it, and either accept it or report to the office.

Plaintiff insists that the test for determining whether one person is the employee of another, or is an independent contractor, is whether the employer possessed the power to control the workmen in the transaction out of which the injury arose, and that the evidence in this case shows that the construction company had full power at all times to inspect, supervise, and control the workmen, and the manner of its performance.

He argues that because the contract provided for "extra work," and it was shown that the extra work might consist of removing defective brick, or stone, or terra cotta, and replacing the same to the satisfaction of the principal contractor, or the architect, and since with regard to such work, if it should be required, Barret would be under the direction of the superintendent of the building, the contractor, or the architect, he was a workman doing piecework. It was shown that there was no "extra work" of this nature on this building. Moreover, the proof was that, if such extra work had

been performed, it would have been paid for on what
is termed a cost plus basis; that is, the cost of the ·ma-
terial and labor with a percentage added for the con-
tractor's profit.   This is not an unusual method of con-
tracting even for large undertakings. · It is a matter
of public knowledge that the government in recent
years adopted this method of paying contractors in
many instances, and the criticism was freely made
that such contracts were much to the benefit of the con-
tractors.   The work which Barrett agreed to do was
provided for in the specifications for the building.
The principal contractor, or·the architect, was to decide
whether the work conformed to the specifications, and
had the right to criticise defective work and suggest
that it be remedied.   Plaintiff showed that the superin-
tendent of the building often`looked at the work which
was being done to see that the work was all right; but
it was also shown that, if the work was not according
to the specifications, the superintendent would call it to
the attention of the contractor, who would take the
matter up with Barrett and see that the work was
performed according to the contract.   It was also shown
that the contractor did not keep the time of a man em-
ployed by Barrett on the job;   that Barrett began and
quit work at such times as suited his own convenience;
that Barrett was paid upon estimates at the end of
each week only 50 per cent. of the estimated price for
the work performed until the job was finished and ac-
cepted, and it was his duty to insure his employees un-
der the compensation act.

The right to supervise, control, and direct the work is
one of the tests for determining the nature of the rela-
tion which exists, but it is not, as plaintiff seems to
contend, the sole test.   The owner or principal con-
tractor has the right to see that the contract is being
carried out in conformity with the specifications, and
seasonably to call defects to the attention of the sub-
contractor.  14 R. C. L. 68, sec. 4.

It is quite often difficult to distinguish between the relation of employee and independent contractor. There is no one criterion known to the law, but several elements may enter into the determination. A test is whether the contract requires the work to be done by the particular person contracting, or whether his personal services are not required, and any person whom he may employ may, under the agreement, do the job. In *Rheinwald v. Builders Brick & Supply Co.*, 168 App. Div. (N. Y.) 425, a sign painter who agreed to paint signs for a specific sum, furnishing his own material and doing the work himself, and guaranteeing the work for four years, was held by the compensation commission to be an independent contractor; but on appeal he was held, by a divided court, to be an employee. The case is interesting as pointing out distinctions. In the opinion of the court it is shown that it was contemplated by both Rheinwald and his employer that he would do all the work personally, and he had no assistants, on whose labor he made a profit. He personally performed every detail of work for which he was paid, and the record indicates that both understood that full rights of control and direction were reserved to and ordinarily exercised by the employer. "Rheinwald really was a worker; the sum he received for his painting was in an economic sense wages, and not profits; he had no helpers, on whose work he made a profit; he was not an employer, with employees whom it was his duty to insure under the act; he personally performed all the work; it was contemplated by the employer that he would; and the employer had at least potential control, direction, and supervision of all the work Rheinwald did at his trade for the respondent."

That case seems to be the converse of this. The contract is silent as to requirement that the work shall be performed by Barrett personally. The evidence shows that he did not do such work for Selden-Breck Company alone, but that he had cleaned and pointed

buildings for other contractors. The fact that after Barrett's death his workman was paid his earned wages by the contractor is not of much moment, since it is shown it was done because, otherwise, the man had a right to file a lien on the building, and he had requested the payment before it was made. Under the facts Barret was not a workman doing piecework, as plaintiff contends.

We have examined many decisions of courts and compensation commissions, and are satisfied that no one fact can be relied upon as a test or criterion, but the nature of the relation must be determined from all the evidence. The finding and judgment of the district court are supported by the evidence.

AFFIRMED.

SEDGWICK and ALDRICH, JJ., not sitting.