CLARENCE J. DAVIS, APPELLEE, v. LINCOLN COUNTY, APPELLANT.

FILED JUNE 8, 1928. No. 26447.

*William E. Shuman, George N. Gibbs,* and *A. J. Rhodes,* for appellant.

*Hoagland, Carr & Beck* and *Halligan, Beatty & Halligan,* contra.

Heard before ROSE, GOOD, THOMPSON, EBERLY and HOWELL, JJ., and PROUDFIT and REDICK, District Judges.

EBERLY, J.

Clarence J. Davis was awarded compensation by the labor commissioner of the state of Nebraska against the county of Lincoln, Nebraska. Upon appeal by the county of Lincoln to the district court for that county, Davis recovered a judgment against the county of Lincoln for "$15 each week" for a period of 300 weeks, to begin to run from

February 6, 1925, (less 142 weeks already paid), and $12 a week, "from and after the last payment of compensation at $15 a week, for the remainder of his life." Attorney's fees were also taxed in the district court in the sum of $750. From this judgment the county of Lincoln appeals.

The contentions presented by the county on appeal are: (1) That the relation then existing between the county and the plaintiff at the time of the accident did not create a compensable status in the latter; (2) that the evidence of physical impairment does not sustain the degree of physical disability as determined by the trial court; (3) that the amount of the award is not sustained by the facts of the record, even though the degree of disability, as determined by the trial court, exists; (4) that the attorney's fees allowed are not authorized by the act under the circumstances of the case, and, if authorized, must be deemed excessive.

The evidence discloses without dispute that Davis had been employed by the corporate authorities of Lincoln county, Nebraska, in addition to other duties, to care for, supervise and perform necessary services in connection with the maintenance and protection of three bridges across the Platte river situated in Lincoln county, Nebraska, as occasion for such repairs and protection might from time to time arise. The services contracted for contemplated and involved, not only such repairs as might be incident to ordinary wear and tear, but also such as were necessary for the proper protection against the effect of the elements, storms, floods, and ice. For this purpose Davis was furnished by the county with appropriate tools and supplies, including "spud bars," for opening holes in ice for reception of blasting charges, pike poles, dynamite, powder, fuses, and caps. The last enumerated were for use in protecting the bridge during the season when the ice, formed in the Platte river during winter months, was breaking up, by preventing the formation of jams and ice gorges about the bridge or in the vicinity thereof which might be dangerous thereto. Plaintiff's contract did not involve con-

tinuous labor. His services necessarily would have to be employed whenever required for the proper protection of the bridges when, due to the forces of nature, the safety of these structures was imperiled. Neither could the time be anticipated with any degree of certainty as to when the services contracted to be rendered by him would be required. The contract necessarily contemplated the performance of work and labor without reference to the day of the week or the time of day.

The nature and surroundings of the transaction and which were necessarily in contemplation of the parties to the contract were such as to support the further conclusion that a "7 day week" of labor was within the contemplation of the parties; for only in that way could the exigencies of the situation be met.

These contractual relations had been in existence for more than a year prior to the accident. Bills for services rendered had been duly presented to, allowed, and paid by, in the regular course of business, the county authorities.

On February 6, 1925, while working pursuant to this contract under the personal direction of one of the county commissioners of Lincoln county, Nebraska, and employed in blasting ice which was then menacing the safety of one of the bridges referred to, the plaintiff was injured by the accidental explosion of dynamite then being used by the plaintiff in the undertaking and which was furnished him by the defendant county through a county commissioner then present.

The transaction before us fairly brings the plaintiff within the meaning of the term "employee," and the county of Lincoln within the designation of the term "employer," as those terms are used in our workmen's compensation act. And it also follows that the relation existing at the time of the accident, in a legal sense, is to be deemed compensable. Comp. St. 1922, secs. 3029, 3037, 3038.

A careful examination of the question of fact involved brings us to the conclusion that the trial court did not err in its determination as to the degree of impairment

suffered by the plaintiff as a result of the accident. It is to be remembered in this connection that "On appeal from the district court to the supreme court in a workmen's compensation case, findings of fact supported by sufficient evidence and findings of fact on substantially conflicting evidence will not be reversed unless clearly wrong." *City of Fremont v. Lea,* 115 Neb. 565.

The findings made by the trial court in the case we are now considering are amply supported by the evidence, and, thus considered, disclose that the plaintiff herein was totally and permanently disabled within the meaning of the workmen's compensation act of Nebraska. Comp. St. 1922, sec. 3044 (3) ; *Frost v. United States Fidelity & Guaranty Co.,* 109 Neb. 161; *Johnson v. David Cole Creamery Co.,* 109 Neb. 707; *Schlesselman v. Travelers Ins. Co.,* 112 Neb. 332.

It is contended on behalf of the county that the instant case presents the case of "continuous employment" as that term is used in section 3049, Comp. St. 1922, and that, therefore, the last clause, or rather sentence, of that section is controlling as fixing the basis of compensation.

"Employment," as defined by Webster, is: "1. Act of employing, or state of being employed. 2. That which engages or occupies; that which consumes time or attention; occupation; office or post of business; service." Webster's New International Dictionary.

It is obvious that the second, and not the first, clause of the definition is applicable to the term "continuous employment" as that term is used in the statute now before us. This conclusion is in harmony with our statutory definition of "employment," in connection with cognate legislation, which treats this term as synonymous with "work" and definable as: "Manual or mechanical labor, clerical, domestic or professional service." Comp. St. 1922, sec. 7725. That statutory term, as employed in the workmen's compensation act, has reference only to that which, in accordance with the contract of hire, "continuously engages or occupies;" (or) continuously consumes the time or attention of

the employee. "Continuous employment," therefore, in the true sense of the statutory terms employed, in the act under consideration, exists only when service or labor required in the performance of the contract service is substantially continuous. In the present case, while the county, by the terms of the contract of hire, had a paramount and continuous claim on the time and services of plaintiff, yet the services required thereunder, as a matter of fact, were not continuous. The terms of the contract of hire established by the record, not only permitted, but the parties thereto evidently contemplated that the plaintiff would engage in many other tasks, employments, or occupations, in addition to that referred to in the contract of hire. He was paid only for time actually devoted to the county interests. When he daily changed his occupation or "employment," it could not be contended that his employment, devoted to the benefit of the county, remained continuous.

It follows that the relation existing between the plaintiff herein and the county of Lincoln, under the terms of their contract and as carried out by plaintiff, was not that of "continuous employment." Therefore, the claim of the county that the basis of compensation in this case is the "average weekly income received from the county" cannot be accepted.

Section 3049, Comp. St. 1922, also provides: "Wherever in this article the term 'wages' is used, it shall be construed to mean the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the accident." Following these general words appears a provision relative to "occupations involving seasonal employment or employments dependent upon the weather," and "continuous employment." The last we have already discussed, and it is insisted on part of the appellant that the employment in this case was not "seasonal" or not "dependent upon the weather." This contention is accepted.

It follows, therefore, that wages, as applied in this case,

are to be determined by the statutory language first quoted. Section 3049, *supra*.

Section 3044, Comp. St. 1922, as applied to the facts in the present case, provides in substance that, for the first 300 weeks of total disability, the compensation shall be 66 2-3 per centum of the wages received at the time of the injury, and thereafter 45 per centum of the wages received at the time of the injury. It also provides that, for disability resulting from permanent injury for specified classes of injuries, "the compensation shall be" a certain named "per centum of daily wages during" a time specified.

At the time of the injury received by the plaintiff, the money rate at which the services rendered were recompensed, under the contract of hire, was 35 cents an hour. This case being neither one involving a "seasonal employment" nor "continuous employment," the daily wage, as the basis of statutory compensation, must be computed on the basis of 35 cents an hour as the "wages received at time of injury."

We find the judgment of the district court consistent with the rule here laid down, and the same is approved.

The allowance of attorney's fees in the total sum of $750 is objected to. In this connection the record discloses that after two hearings before the labor commissioner of the state of Nebraska, and after an appeal to the district court, amendments to pleadings were allowed by the district court, over objection of the plaintiff, which injected new questions into the case. The issues were, in fact, substantially changed. This necessitated, on part of plaintiff's attorneys, new and additional investigations both of fact and of law. On the trial of the case the value of attorney's services as rendered was the subject of oral testimony. Two witnesses whose competency is unquestioned testified as to what the legal services were worth, as performed in connection with the trial in district court, and placed a reasonable value of the same at $750. The qualifications, good faith and honesty of the witnesses are unquestioned in the record. No testimony whatever was produced by the coun-

ty to meet this evidence. Not a syllable appears in the bill. of exceptions which in any manner qualifies, refutes or contradicts the unanimous conclusion which was placed before the court. The district judge who presided at the trial observed in a large degree the actual performance of the services testified to; he heard the witnesses; their uncontradicted testimony was accepted by him; and he found in accordance therewith.

Section 3048, Comp. St. 1922, provides: "Whenever the employer refuses payment, or when the employer neglects to pay compensation for thirty days after injury, and proceedings are had before the compensation commissioner, a reasonable attorney's fee shall be allowed the employee by the court in the event the employer appeals from the award of the commissioner and fails to obtain any reduction in the amount of such award."

There can be no question in this case but what the employer appealed to the district court and failed to obtain a "reduction." It follows that the employee, under the facts of the record and as a matter of right, was entitled to have a reasonable attorney's fee taxed in his behalf in that tribunal. The question of a "reasonable attorney's fee" must be necessarily determined by the facts of the case in which allowed, and its amount is a matter, in a large degree, of discretion vested in the trial court. That discretion was exercised in the instant case, and in view of the record we cannot find that the district court erred in so doing.

It follows, therefore, that the judgment of the district court is correct, and is, in all things,

AFFIRMED.