WILLIAM CLAUS, APPELLANT, V. PAUL DEVERE, APPELLEE.

FILED MARCH 13, 1931. No. 27737.

Flansburg & Lee and John O. Sheldahl, for appellant.

Sanden, Anderson, Laughlin & Gradwohl, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ.

GOOD, J.

This action arises under the workmen's compensation law. Plaintiff was the employer; defendant the employee. In his petition plaintiff sought the vacation of an award of compensation made to defendant by the compensation commissioner. As grounds for the vacation plaintiff alleged that defendant did not sustain to him the relation of an employee, but was an independent contractor; that, at the time defendant was injured, he was employed in interstate commerce, and that the workmen's compensation law, as applied to those engaged in interstate commerce, is in violation of subdivision 3, sec. 8, art. I, of the federal Constitution, which gives to congress the power to regulate commerce among the several states. The trial court found for defendant and awarded compensation. Plaintiff has appealed, and defendant has filed a cross-appeal for re-

fusal of the trial court to allow him penalty for waiting time and to allow for nursing services furnished defendant by his wife while he was suffering from his injuries.

Plaintiff is engaged in the buying and shipping of live poultry and maintains two or more places of business in the state of Nebraska. The poultry is shipped in carload lots to various markets. It is the custom to have a caretaker, who has charge of the poultry, feeding, watering and caring for it, accompany each carload shipment. Defendant has at different times been employed by various firms engaged in the poultry business as a caretaker accompanying shipments of live poultry. He solicited plaintiff for work of this character. Plaintiff had no shipments at that time, but informed defendant that he probably would have a little later. A short time thereafter he called defendant by telephone and requested that he be ready to go with him the next morning. On the following morning defendant accompanied the plaintiff and another employee in the plaintiff's automobile from Lincoln, Nebraska, to Belle Fourche, South Dakota. Plaintiff informed defendant that he would have a car for him, but that he did not know at that time from what particular place the car would start. On the way to Belle Fourche the parties stopped at Alliance and other points, where plaintiff visited the poultry dealers from whom he purchased, and introduced defendant as one of his new men with whom they were to deal. At Belle Fourche the other employee was left to take charge of a car, and plaintiff and defendant returned to Crawford, Nebraska, at which place plaintiff had ordered a car for the shipment of live poultry to New York. Defendant was placed in charge of the car, and he and plaintiff remained there that day, loading about 6,000 pounds of poultry for the shipment. Plaintiff then directed the car to proceed to Alliance, where defendant would receive additional poultry, with instructions that, if sufficient poultry to make a carload should not be obtained there, the car should be stopped at either Grand Island or York, Nebraska, in order to pick up sufficient poultry to make a carload. Plaintiff was to direct at which place they should

stop. Defendant was injured in the course of his employ-
ment at Alliance and was unable to perform work there-
after. Another person was, by plaintiff, put in charge of
the car, and it proceeded to its destination.

It appears that defendant furnished certain articles,
such as a rake, hoe and scoop, and his own cooking utensils
and bedding. It appears also that curtains are used to
place on the sides of the car when necessary to protect the
live poultry from rain or snow, and that these curtains
were furnished by plaintiff; that plaintiff purchased and
paid for the feed for the poultry en route to destination;
that he routed the car from its initial point to destination,
and had the right to divert it from one point to another,
and to control the time when the poultry should be sold,
and he made the arrangements with the parties to whom
the poultry should be sold.

Plaintiff contends that defendant was to receive for the
entire round trip the sum of $70; that plaintiff was con-
cerned only with results; that defendant was, therefore,
an independent contractor, and not an employee. Defend-
ant testified that no compensation for his services was
agreed upon, but that the customary and reasonable wage
paid was $8 a day from the time of starting until the care-
taker had returned to Lincoln. Plaintiff testified that it
was his uniform custom, in all of his shipments, to pay
$70 for the round trip. The evidence discloses that some-
times a trip to New York could be made, and the care-
taker return, in five days; that the average time from Lin-
coln was seven days; that from the western part of the
state the usual time consumed was eight days.

We do not regard the matter of payment, whether it
was $70 for the round trip or $8 a day, as decisive of the
question, but it would appear that defendant's contention
is the more reasonable and probable. If, for any reason,
the price for the poultry was not satisfactory at the point
of destination, plaintiff had the right to hold over the
shipment for a later market, or to divert it to another
market. The caretaker, in that event, would necessarily
be required to remain with the car and care for the poultry.

It is possible that a trip might consume much more than the usual time. It seems more reasonable to suppose that the compensation would be based upon the time necessarily consumed than upon the round trip which might be twice as long in one case as in another.

There is no hard and fast rule by which to determine whether one sustains the relation of employee or that of an independent contractor. It has frequently been held by this and other courts that the relation must be determined by the facts in the particular case. *Knuffke v. Bartholomew,* 106 Neb. 763; *Barrett v. Selden-Breck Construction Co.,* 103 Neb. 850.

Section 48-114, Comp. St. 1929, *inter alia,* provides: "The following shall constitute 'employers' subject to the provisions of this article: * * * Every person, firm or corporation, * * * who is engaged in any trade, occupation, business, or profession as described in section 97 of this chapter (48-106) and who has any person in service under any contract of hire, express or implied, oral or written, and who prior to the time of the accident to the employee for which compensation under this article may be claimed, shall not, in the manner provided in section 103 of this chapter (48-112), have elected not to become subject to the provisions of Part II, of this article."

Section 48-115, Comp. St. 1929, *inter alia,* provides: "The terms 'employee' and 'workman' are used interchangeably and have the same meaning throughout this article. The said terms * * * shall be construed to mean: * * * Every person in the service of an employer who is engaged in any trade, occupation, business or profession as described in section 97 (48-106) of this chapter, under any contract of hire, express or implied, oral or written."

Clearly, one engaged regularly in the buying and shipping of poultry in carload lots to distant markets is engaged in a "business," within the meaning of the workmen's compensation law. It is also clear that the defendant was employed by and working for the plaintiff in that business. Plaintiff had the right to control when and where the car should stop to take on poultry and to what

destination it should go, and the right to divert it. He contends that, because defendant furnished a part of his tools and equipment for the work and used his own judgment as to when and how often he would feed and water the poultry, he was an independent contractor. So far as the tools are concerned, it is customary for every brick mason or carpenter to have his own tool kit. The fact that he furnishes his own tools with which to perform labor does not make him an independent contractor. The fact that the employee must use his own judgment in the manner of performing his work does not, of itself, make him an independent contractor. Every driver of a vehicle must, in the nature of things, use his own judgment. Every carpenter must, of necessity, use his own judgment as to whether a particular piece of material is fit for the place where it has to be used. Every brick mason must determine and use some judgment as to whether the mortar furnished is of the right consistency and whether a particular brick is fit for the wall which he is laying. These facts do not convert him from an employee into an independent contractor. We have no hesitancy in concluding, as did the trial court, that, under the circumstances disclosed by the record, defendant was an employee, and not an independent contractor.

As to the question of the applicability of the Nebraska workmen's compensation law to the facts in this case, it may be observed that plaintiff was not engaged in the work of interstate transportation. He was not employed by the railway company; he had no part in the operation of the trains or of any railroad work. His work was to feed, water and care for plaintiff's poultry. It may be conceded that, where congress has occupied the legislative field covering this phase of interstate commerce work, it is probable that the state law would be inoperative. However, where congress has not, by legislation, entered or occupied the particular field, the state is at liberty so to do. *Hendrick v. Maryland*, 235 U. S. 610; *Clark v. Poor*, 274 U. S. 554. Congress has occupied the field with reference to employment in interstate transportation and to those

engaged in maritime work. So far as we are advised, it has not undertaken to regulate the work of caretakers of live stock and poultry which is being carried from one to another state.

Again, the operation of the Nebraska workmen's compensation law is optional and, in effect, contractual. The employer may elect to be subject to it, or not, as he sees fit to contract.

We conclude that the workmen's compensation law is applicable to the situation of the parties in this case, and that it is not violative of subdivision 3, sec. 8, art. I of the federal Constitution.

Was defendant entitled to recover for the value of services rendered by his wife as a nurse? The rule is that the husband is entitled to the services of the wife. He is not liable to her; nor could she sue and recover from him for any service rendered him as a wife and a member of his household. The trial court, we think, properly refused to make any award to defendant on account of services rendered him by his wife as a nurse in their home. If defendant's wife had been a professional nurse, carrying on her separate profession, and was called as a nurse to care for her husband in a hospital where she was employed, or from her work in the hospital to care for him in his home, a different question would be presented. The evidence, however, shows that defendant's wife had no such occupation. Her occupation was that of the ordinary housewife.

We also think that defendant was not entitled to recover the penalty for waiting time. It is a well-established rule in this jurisdiction that, where a reasonable controversy exists between an employer and an employee as to the former's liability under the workmen's compensation act, the employer is not liable for waiting penalty during the time necessarily required for the hearing of a cause upon appeal. *McGuire v. Phelan-Shirley Co.*, 111 Neb. 609; *McCrary v. Wolff*, 109 Neb. 796; *Swift & Co. v. Prince*, 106 Neb. 358; *Osborn v. Omaha Structural Steel Co.*, 105 Neb. 216; *Updike Grain Co. v. Swanson*, 104 Neb. 661.

In the instant case, the question of the liability for compensation to persons acting as caretakers of poultry, moving in interstate commerce, has not been hitherto determined by this court, nor, so far as we are aware, by any other court. There was a reasonable controversy between the parties as to the plaintiff's liability under the workmen's compensation act.

We find no error in the record. Defendant is entitled, however, to recover an attorney's fee, to be taxed as part of the costs. The sum of $100 is awarded to defendant for attorneys' fee in this court.

The judgment of the district court is

AFFIRMED.