EVELYN NOLLETT, SPECIAL ADMINISTRATRIX, APPELLANT, V.
HOLLAND LUMBER COMPANY, APPELLEE.

4 N. W. (2d) 554

FILED MAY 29, 1942. No. 31414.

*Gray & Brumbaugh,* for appellant.

*Wear, Boland & Nye, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CAR-
TER, MESSMORE and YEAGER, JJ.

PAINE, J.

This is a workmen's compensation case, to recover for the
death of plaintiff's husband, who was accidentally killed
when he fell from a roof upon which he was working. The

plaintiff secured an award from a judge of the compensation court, which award was set aside by the district court, from which judgment plaintiff appeals.

Defendant for its petition on appeal alleges that the plaintiff, Evelyn Nollett, filed petition in the Nebraska workmen's compensation court, alleging that she is the special administratrix of the estate of Felix O. Nollett, deceased; that Felix O. Nollett was an employee of the Holland Lumber Company, and as such employee sustained personal injuries, from which he died on June 13, 1941, and that at the time of his injuries and death he was earning $40 a week. Defendant alleges that thereafter it filed answer, admitting the injuries, but denying that Nollett was an employee of defendant, and alleging that said deceased and one Clyde Dirst formed a copartnership and as such were independent contractors, and that, while in the performance of said contract, and while acting as an independent contractor, deceased suffered the injuries from which he died.

The petition alleges that a hearing was had before the Nebraska workmen's compensation court, and on October 11, 1941, the court entered an award in favor of plaintiff and against defendant. Defendant states that the award and the findings of fact by said compensation court were not supported by the evidence, and that said court acted without or in excess of its power, and prays that the award be vacated and held for naught, and that the court enter a decree finding that Felix O. Nollett, deceased, was not an employee of defendant on June 13, 1941, but that he was an independent contractor, and that his injuries and death occurred while in the performance of an independent contract.

Attached to the petition as exhibit A is the award of the compensation court, granting plaintiff, Evelyn Nollett, compensation in the sum of $13.83 a week during a period of 325 weeks, and also the amounts of $150 for funeral expenses and $100 for medical expense, and to attorney Lawrence F. Welch the sum of $35 for legal services rendered to plaintiff.

Answer was filed by plaintiff, Evelyn Nollett, on October 23, 1941, admitting the filing of her petition in the Nebraska workmen's compensation court, in which she alleged that her husband, Felix O. Nollett, was on June 13, 1941, in the employ of defendant company as a roof applicator, and while so employed he fell and was killed in an accident which arose out of and in the course of his employment; that Nollett had been earning approximately $40 a week, and that because of such accident and death of her husband she is entitled, for the benefit of herself and two minor children, to be awarded the sum of $15 a week for 325 weeks, together with medical and funeral expenses. Plaintiff denies each and every allegation of defendant's petition on appeal except such as are admitted to be true.

On January 5, 1942, after trial, a judgment was entered by the district court, finding that plaintiff's decedent and one Clyde Dirst, who were operating as a roof applicating team, were applying a roof at 2226 Howard street, Omaha, on June 13, 1941; that decedent accidentally fell from said roof and received injuries from which he died on said date; that at the time of his injuries and his resulting death plaintiff's decedent was an independent contractor, and not an employee of defendant, but that Felix O. Nollett and Clyde Dirst were engaged in the performance of a contract entered into between the Holland Lumber Company and themselves, and while in the performance of said contract as such independent contractors plaintiff's decedent received the injuries from which he died.

The court further finds that the award of the compensation court is not supported by the evidence, and is contrary to law, and that plaintiff is not entitled to any benefits under the workmen's compensation act of Nebraska. It was therefore adjudged and decreed that the award of the compensation court be set aside and vacated, that the appeal by defendant to the district court be sustained, and the action of the plaintiff dismissed.

It appears from the briefs and argument that this is the first case of injury to a roof applicator which has come to

this court, and that the only question to be determined is whether the injured man was an employee or an independent contractor.

This court has held that whether one is an employee or an independent contractor, within the meaning of the workmen's compensation law, must be determined from the facts in the particular case, rather than from any particular feature of the employment or service. *Knuffke v. Bartholomew,* 106 Neb. 763, 184 N. W. 889; *Claus v. DeVere,* 120 Neb. 812, 235 N. W. 450; *Showers v. Lund,* 123 Neb. 56, 242 N. W. 258. Therefore, it will be necessary to set out briefly the facts in the case at bar.

On the following facts there is little dispute: Nollett was one of a roofing team, the other being Clyde Dirst. Nollett had been a carpenter, working on repairs to property, also he had worked for the Skaggs Store people. Dirst was not a carpenter by trade, but his experience had been confined to roofing. It is more satisfactory if two men work together in applying roofs, and the two of them applied to the Holland Lumber Company together for roofing work. These men each owned the necessary tools, ladders and scaffolding. Nollett owned a car, in which they hauled their equipment to the job. The second time they applied to the Holland Lumber Company for work, Mr. Ferriday, who had charge of the roofing department, sent them to a job on Burt street. In the conversation it was stated that they would receive a definite price per square. While the material was to be delivered there the next morning, these men went to the place with their ladders at about 4:00 p. m. the same day, found the material already there, and went right to work, and worked for two hours.

In putting on roofing, it is known to all that if it is very hot in the middle of the day some kinds of roofing will break in walking over it, and extra care must be taken, and on some jobs they could not work early in the morning if people were asleep in the house, so that hours of work would be determined by the conditions of the particular job.

When they reached a place on this first job where a val-

ley was to be applied, they waited for instructions from Ferriday, who told them that the Holland Lumber Company wanted a double thickness put on in the valleys, and he criticized the way they trimmed the roofing at the ridge, and wanted them to trim more carefully on other jobs, but he would let that first one go as they had trimmed it, as it was all right in that neighborhood. They were paid for this roofing work as each roof was finished.

The next job was on Spencer street, which they put on with no directions by Ferriday. They then went to a place on Howard street to work on a garage roof. On one job they received only 85 cents a square. When Nollett fell to his death, Dirst said he did not care to work any more on that job, and Ferriday hired some one else to complete the job.

The Holland Lumber Company was in the business of selling to its customers completed roofs, and they furnished all of the material, but the roofing was put on by regular applicators. This appears to be a general custom throughout the country, according to cases which will be cited later on. The money was paid to either Nollett or Dirst, and they split the money equally between them. The custom appears to be that such roofing teams get so much per square, varying with the kind of roof and the material applied, and the only understanding with the lumber company was that the work would be done in a workmanlike manner and in a reasonable time, and the prices they paid varied from 85 cents to $1.50 per square.

Much is made of the fact that Ferriday criticized the way the roof was trimmed on one of the jobs, but the lumber company only paid 85 cents a square for that particular job, but when they paid more on better jobs the trimming was done in a more satisfactory manner. These men did not go to work at any stated hour or time, but worked when they pleased.

"The burden of proof is on the employee to prove by a preponderance of the evidence that personal injury was caused to the employee by an accident arising out of and in

the course of his employment." *Bartlett v. Eaton,* 123 Neb. 599, 243 N. W. 772.

"Liberal construction of the workmen's compensation law to give effect to its purpose is a rule too well settled to admit of controversy, but the statute cannot be liberalized by judicial interpretation to allow noncompensable claims." *Burlage v. Lefebure Corporation,* 137 Neb. 671, 291 N. W. 100.

In determining whether one is a servant or an independent contractor, the following facts may be considered: (a) The extent of control the master may exercise over the details of the work; (b) whether one is engaged in a distinct occupation or business; (c) whether the work is usually done under the direction of the employer, or by a specialist without supervision; (d) the skill required; (e) which one supplies the tools or equipment; (f) the length of employment; (g) the method of payment,—by the time, or by the job.

The above items to be considered are based somewhat on statements found in 1 Restatement, Agency, 485-487.

It is shown by the evidence that this roofing team was told how the Holland Lumber Company wanted old valleys covered, and how they wanted the edges trimmed, which, it is contended, was the supervision of an employee, and yet this knowledge of a preference in these matters would not necessarily make these men employees under the facts.

It is always necessary that the final results of the work done shall meet the approval of those who pay for it.

The Holland Lumber Company knew nothing in advance about the tools or equipment to be used, and no directions were given about the kind of ladders, or how to attach or erect scaffolding, which things would contribute to the safety of the workmen, and if they had been employees, engaged in an admittedly dangerous work, the master would have doubtless directed such important operations very specifically.

An "independent contractor" is one rendering service representing the wishes of the person for whom the work is

done, only with respect to the result accomplished, not as to the means.

In *Hays v. Board of Trustees*, 86 Ind. App. 460, 158 N. E. 234, a roof repairer was held to be an independent contractor, and not entitled to compensation, when he fell from a ladder and received personal injuries, and a refusal to grant compensation was affirmed.

A lather was employed by a general contractor in New York state to lath a house at a stipulated price per thousand. Working hours were not prescribed. He paid his helpers, and furnished his own tools and scaffolds. In *Matter of Hurst v. Fehr & Sons*, 225 App. Div. 436, 233 N. Y. Supp. 393, such lather was held to be an independent contractor.

Another case, perhaps nearer the border line than the case at bar, was decided in a long opinion by the commission of appeals in Texas. T. J. Shannon worked in a planing mill, but owned an electric floor sanding and polishing machine. He earned $7 a day, but when using his surfacing machine charged $2.50 an hour, and did the work himself, sometimes having a helper. He had completed the work of fixing a floor in a bank directors' room when in detaching his machine he was electrocuted. It was held that he was an independent contractor, which is a person who, in the pursuit of an independent business, undertakes to do a specific piece of business, using his own means and methods, without submitting himself to their control in respect to all its details. *Shannon v. Western Indemnity Co.*, 257 S. W. (Tex. Com. App.) 522.

A late roofing case (1939) where the injured man was held to be an independent contractor is *Hart v. Kimball*, 122 N. J. Law, 217, 4 Atl. (2d) 493.

In a Michigan case, the written contract of a roofer provided that he should do the work according to specifications furnished by the defendant, and to make good any defects in workmanship. In short, it was a contract to do a job of roof-laying with full control of the work and means of accomplishing it. In doing this work he was an independent

contractor. *McCormick v. Sears, Roebuck & Co.*, 254 Mich. 221, 236 N. W. 785.

We have examined these and other cases from other states which involve roofing applicators. It appears to be a definite kind of work, which is performed in the same manner, and paid for at regular prices per square, the going price being higher in other states, but in each case we have found the courts of other states have often stated it was a close question, or a border-line case, but finally reach a conclusion that a roofer so engaged is an independent contractor, and no cases have been cited to the contrary.

Under the facts and the law, and in the light of the decisions of many other states, we have reached the conclusion that in the case at bar the plaintiff's deceased was an independent contractor, and that the judgment of the district court should be affirmed.

AFFIRMED.