CARL E. SCHNEIDER, ADMINISTRATOR OF THE ESTATE OF FINIS R. HEDDEN, DECEASED, APPELLEE, v. VILLAGE OF SHICKLEY, NEBRASKA, ET AL., APPELLANTS.

57 N. W. 2d 527

Filed March 13, 1953. No. 33291.

*Chambers, Holland & Groth,* for appellants.

*Keenan & Corbitt,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This appeal involves a claim made by the administrator of the estate of Finis R. Hedden, deceased, in behalf of the deceased's widow and minor daughter who were dependent upon him for their support. The claim is for benefits under the Nebraska workmen's compensation law. Both the workmen's compensation court and the district court for Fillmore County, to which the cause was appealed, allowed the claim and awarded benefits accordingly. The defendants, the Village of Shickley and Employers Mutual Casualty Company, the latter being the workmen's compensation insurance carrier for the village, filed a motion for a new trial in the district court and have taken this appeal from the overruling thereof.

The only question raised by the appeal is whether or not decedent was, at the time he was accidently killed on July 17, 1951, an employee of the village of Shickley or an independent contractor.

"On any appeal to this court in a workmen's compensation case the cause will be here considered de novo upon the record." Solheim v. Hastings Housing Co., 151 Neb. 264, 37 N. W. 2d 212.

"Generally, the term 'independent contractor' signifies one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to control of his employer except as to the result of the work." Hines v. Martel Telephone Co., 127 Neb. 398, 255 N. W. 233. See, also, Nollett v. Holland Lumber Co., 141 Neb. 538, 4 N. W. 2d 554; Reeder v. Kimball Laundry, 129 Neb.

306, 261 N. W. 562; Petrow & Giannou v. Shewan, 108 Neb. 466, 187 N. W. 940.

Finis R. Hedden was a qualified and experienced electrician living in Geneva, Nebraska. There he operated his own repair shop, dealing in electrical services and supplies. Generally he performed such services for his customers as an independent contractor.

But that fact is not controlling, for as stated in In re Estate of Bingaman, 155 Neb. 24, 50 N. W. 2d 523: "The contract under which service is performed and the performance thereunder determine the relationship between the contracting parties."

The village of Shickley has owned its electrical distribution system since 1920. Until sometime in early 1947 or 1948, the record is not positive as to just when, the village had a full-time employee who performed all the services necessary to maintain it. About that time this employee quit. The village had no other employee qualified to do this work. Instead of replacing the employee who had quit with another full-time employee qualified to do this work the village board of trustees, through its light and water commissioner Gaylord Matzke, who was a member of the board, contacted decedent and made an oral agreement with him in regard thereto. This agreement was as follows: That whenever decedent was contacted by anyone for the village and asked to perform some electrical work for it he would respond by coming to Shickley as soon as it was convenient for him to do so and perform any and all work in connection with the village's distribution system that it might ask him to do. Decedent, at various times during the years that followed and up until the time of his death on July 17, 1951, performed services for the village under this agreement. The work performed included putting in several large cut-out fuses, putting in several new transformers, doing wiring in connection with new street lights, and, in general, maintaining the distribution system. When he first

started to work his rate of pay was $1 an hour but this had increased to $1.50 at the time of his death. The work he was to perform was neither fixed as to amount nor time, but was irregular as to both. This is evidenced by the fact that during 1949 the village paid decedent the sum of $440.85, during 1950 the sum of $83, and in 1951, up to July 1, the sum of $78.94. Between July 1 and July 14, 1951, both dates inclusive, decedent had worked for the village a total of 36 hours. He had also worked for the village on Monday, July 16. No bill has been submitted to the village to cover these services. He reported for work on July 17. At that time he was engaged in dismantling an old transformer bank. The village had installed a new one because of an increased demand for electricity. While so engaged he was accidentally killed by an electric shock.

"On the issue as to whether a workman is an employee as distinguished from independent contractor, his relation to his employer should be determined from all of the facts, rather than from any particular feature of the employment or service." Knuffke v. Bartholomew, 106 Neb. 763, 184 N. W. 889. See, also, Nollett v. Holland Lumber Co., *supra;* Showers v. Lund, 123 Neb. 56, 242 N. W. 258; Petrow & Giannou v. Shewan, *supra;* Barrett v. Selden-Breck Construction Co., 103 Neb. 850, 174 N. W. 866.

One indispensable element to the creation of the relationship of an independent contractor is that the party must contract to do a specified piece of work for a specified price. See, Prescher v. Baker Ice Machine Co., 132 Neb. 648, 273 N. W. 48; Reeder v. Kimball Laundry, *supra.* The services which decedent had agreed to perform for the village consisted of his doing whatever it asked him to do in connection with its furnishing the people of Shickley with electricity by and through its distribution system. He was to do it whenever need therefor occurred. The need for such services was irregular and its character and extent uncertain. It was

not an agreement to do a specified piece of work. Neither do we think the hourly rate indicative of a specified price. As stated in Peterson v. Christenson, 141 Neb. 151, 3 N. W. 2d 204: "The amount of his compensation would depend upon, not the completion of the job, but the length of time required to perform the job. This is indicative of an employee status. Showers v. Lund, *supra*." See, also, Petrow & Giannou v. Shewan, *supra*.

The evidence establishes that either the village or decedent could have terminated the arrangement agreed to at will. We said in Cole v. Minnick, 123 Neb. 871, 244 N. W. 785: "* * * the most important feature is the right of either party to terminate the relation without liability. Where such right exists the workman is usually a servant (Industrial Commission v. Hammond, 77 Colo. 414)." See, also, Riggins v. Lincoln Tent & Awning Co., 143 Neb. 893, 11 N. W. 2d 810; Showers v. Lund, *supra;* Knuffke v. Bartholomew, *supra*. It is significant that after decedent's unfortunate accident no one was employed in his behalf to finish the work he was engaged in for the village; that is, the dismantling of the old transformer bank. Apparently this was done by the village. See, Prescher v. Baker Ice Machine Co., *supra;* Petrow & Giannou v. Shewan, *supra*. The village kept a rather complete stock of supplies. With a few small exceptions it furnished all the supplies used by decedent in connection with the work he performed. This is indicative of the existence of the relationship of employer and employee. See Prescher v. Baker Ice Machine Co., *supra*. The evidence indicates the village expected decedent to personally perform the work, although he could employ others to help him. Such is indicative of an employer-employee relationship. See, Cole v. Minnick, *supra;* Knuffke v. Bartholomew, *supra;* Barrett v. Selden-Breck Construction Co., *supra*. The fact that no definite time was fixed within which the work had to be done tends to establish decedent was an employee. As said in Riggins v. Lincoln Tent &

Awning Co., *supra:* "In this respect the following facts tend to establish that plaintiff was an employee: * * * There was no definite time fixed within which the work was to be performed * * *."

The work decedent was performing for the village was not continuous and it was permissable for him to work for others. However, as stated in Cole v. Minnick, *supra:* "It is not necessary that the services under the employment be continuous, and the fact that the contract of employment permitted and contemplated that the employee would engage in other tasks or occupations does not remove the particular contract of hire from the operation of the statute. Davis v. Lincoln County, 117 Neb. 148."

Decedent furnished his own tools, including a truck. But, as stated in Cole v. Minnick, *supra:* "Merely because an employee furnishes his own tools and equipment does not convert him from an employee into an independent contractor. Claus v. DeVere, 120 Neb. 812." See, also, Riggins v. Lincoln Tent & Awning Co., *supra.*

The village was not primarily interested in the details of how and when the work was performed, as it had no one in its employ sufficiently qualified to superintend it. It was only interested in securing a reasonably prompt and satisfactory result after advising decedent what the work was it wanted performed and showing him where it was to be performed. It left the details thereof entirely in his control. The fact that decedent could perform other tasks and do this work at his convenience has already been discussed. As stated in Barrett v. Selden-Breck Construction Co., *supra:* "The right to supervise, control, and direct the work is one of the tests for determining whether a person is an independent contractor or an employee, but it is not the sole and only test." See, also, Nollett v. Holland Lumber Co., *supra;* Petrow & Giannou v. Shewan, *supra.* But, as stated in Claus v. DeVere, 120 Neb. 812,

235 N. W. 450: "The fact that the employee must use his own judgment in the manner of performing his work does not, of itself, make him an independent contractor."

Decedent was a qualified and experienced electrician and personally known to be such by Gaylord Matzke, the light and water commissioner and a member of the board of trustees of the village of Shickley. It was Matzke, because of this acquaintanceship, who contacted decedent and made the oral agreement with him. In this regard we think the following from Peterson v. Christenson, *supra*, is applicable: "It is true that a skilled workman may be employed because of his particular ability to go ahead and do work for which he has been trained. That fact implies an understanding that he should do the work according to his skill, with less or no direction, but it does not change him from an employee to a contractor."

We think the following, taken from Showers v. Lund, *supra*, is apropos here: "Much learning has been written into the decisions of the courts on the distinctions between an employee and an independent contractor. The result is confusing. It is difficult to reconcile the diverse results derived from quite similar facts. Some apparent inconsistencies are traceable to local statutes. In writing of the diversity and confusion of opinion in the precedents in different jurisdictions, the Iowa supreme court said: 'In this state of the precedents we can only hope to maintain, if we may, consistency in our own decisions.' Burns v. Eno, 240 N. W. (Ia.) 209."

While the record contains some indicia that decedent was performing work for the village as an independent contractor we are, nevertheless, of the opinion that the indicia, taken as a whole, establishes that he was an employee of the village and performing services for it as such at the time he was accidentally killed. Such finding, under the factual situation here disclosed, is in keeping with our past holdings under comparable situations. See, Riggins v. Lincoln Tent & Awning Co.,

*supra;* Peterson v. Christenson, *supra;* Davis v. Lincoln County, 117 Neb. 148, 219 N. W. 899; Showers v. Lund, *supra;* Cole v. Minnick, *supra;* Knuffke v. Bartholomew, *supra.*

Comment is made by appellants as to some of the questions asked by the trial court. The complaint is that they are leading and suggestive and they could not properly make objection thereto. Trial courts should be careful in this regard. However, since the matter is here for review de novo the complaint becomes immaterial.

Appellee asks that if the cause be affirmed we allow an attorney's fee pursuant to section 48-125, R. R. S. 1943. In view of what we have hereinbefore stated, we affirm the judgment of the trial court and allow appellee an attorney's fee of $350 for the services rendered by his attorneys in this court, same to be taxed as costs.

AFFIRMED.