BUDNY, by guardian *ad litem*, Appellant, vs. AMERICAN
CANDY COMPANY, Respondent.

*November 1—November 19, 1912.*

*Master and servant: Injury to boy from machinery: Knowledge of
danger: Instruction and warning: Negligence.*

In an action for injury to a boy under fifteen years of age, em-
ployed in defendant's candy factory, whose hand was caught
between the rolls of a candy machine, the evidence is *held* to
show, contrary to findings by the jury, that the boy was fully
informed of the danger and that there was no negligence on the
part of the defendant in failing to instruct and warn him.

APPEAL from a judgment of the circuit court for Milwau-
kee county: F. C. ESCHWEILER, Circuit Judge. *Affirmed.*

The plaintiff suffered the loss of three fingers and the par-
tial loss of a fourth finger on his left hand on a cough drop
machine while he was working for the defendant, and brings
this action by his guardian *ad litem* to recover damages for
the injuries.

The cough drop machine consists principally of two brass
rollers between seven and eight inches long and four inches in
diameter.   There are oblong indentations on the surfaces of
both rollers, which meet as the rollers revolve close to one an-
other and shape the candy as it runs between the rollers into
drops.   The rollers are a small fraction of an inch apart, and
the drops as they come from the machine are connected by a
thin sheet of candy which is formed between the rollers.   The
rollers are held in a frame, and the gearing causing the revo-
lution of the rollers is driven by a pulley and belt, which in
the present instance were electrically propelled and caused the
rollers to revolve sixty to eighty times a minute.   The ma-
chine was placed near the edge and about the middle of a wide
table about sixteen feet long.   The hot candy is fed from the
heating table up an incline and between the rollers on the

side of the machine on which the rollers converge as they revolve. An air pipe ran up from the edge of the table alongside of the rollers and from this an arm or small spout extended out over the top roller. The air from this spout, which opened about three inches above the top roller, was blown onto the roller to cool it and the candy as it came from the machine, thus preventing a sticking of the candy to the roller.

On the day before the accident the plaintiff went to work for the defendant and was put at work with another new boy by the foreman of the defendant. Plaintiff's duty was to receive the candy as it came from the machine and with a stick break the sheet of candy so that the drops would be separated, and then to push the candy along the table to be handled by other employees. The roller could not be kept sufficiently cool and the candy would stick to the rollers. At times grease or starch would be placed on the rollers to prevent the candy sticking to them. At other times the feeding of the hot candy would be stopped and a board about four inches wide would be placed on the incline, over which the candy was fed into the machine and held in position by a monkey wrench, and the air spout would be so turned that the air current would strike the board and be forced between the rollers to cool them. This might happen eight or ten times a day.

The plaintiff testified that about 10:30 o'clock on the morning of September 13, 1910, the second day he was working for the defendant, the supply of candy was exhausted and he sat down near the machine, and that George Diedrich, the workman who fed the candy into the machine, while passing by, told him to turn the air on the machine; that he went to the side of the machine at which he had been working and with his left hand took hold of the spout to move it as he had been directed; that the spout moved more easily than he expected; and that his hand slipped over the top of the roller and his fingers were caught between the rollers and crushed

and injured.   He also stated that neither the defendant's foreman nor George Diedrich, his superior, had given him any warning or instruction as to the danger of getting his hand between the moving rollers.

George Diedrich, the candy maker, testified that he had not directed the plaintiff to turn on the air.   He also testified that on the previous day he had caught the plaintiff in the morning fooling with the machine and that he gave him instructions that he was not to touch the machine; and that he found the air turned off by a damper in the blow pipe, and that he then told the plaintiff that he wanted the air on and he himself opened it again.   He testified that in the afternoon he caught the plaintiff running his hands on the rollers, and that just previous to the time of the accident he had adjusted the board and monkey wrench and the air spout so as to cool both rollers.

The foreman for the defendant, who had charge of the stock candy room and who had put the plaintiff at work when he started on the day before the accident, testified that he told both of the boys who came to work at that time that they should work for Mr. Diedrich and do what he told them, and that he showed them at the start what they were to do.   He also testified that at the time of the accident he heard a call, that he went to the plaintiff, who had just been released from the machine, took him to a sink about twenty or twenty-five feet away, and that the plaintiff, in reply to a question of how the accident happened, said in a crying way that he was playing with the wind.

The boy who went to work for the defendant at the same time as the plaintiff stated that when they first went to work George Diedrich told him and the plaintiff to stay away from the machine and not to touch it, and that about an hour afterwards he heard Diedrich tell the plaintiff not to monkey with the machine.

Walter Comdohr, the person who stopped the machine and

released the plaintiff, testified that he found the board and monkey wrench on the machine, at the time of the accident, adjusted as Diedrich testified he had left them. One of the girls who was working at the table with the plaintiff testified that the foreman had told the plaintiff to be careful about the rollers.

The plaintiff, called as an adverse witness, testified as follows:

"*Q.* You have seen a clothes wringer, haven't you? *A.* Yes, sir. *Q.* And you know how they work? *A.* Yes, sir. *Q.* You knew, didn't you, that if you got your finger in between these rolls on the side where the candy was fed in that they would get drawn in there? *A.* Yes, sir. *Q.* You could see that? *A.* I couldn't see it, but I knew it. *Q.* You knew that was what would happen? *A.* Yes, sir. *Q.* You knew from looking at the side of the machine at which you worked that the opening on the other side was exactly opposite, it was exactly opposite the place where the rolls separate. That is, the side where anything was fed in was exactly opposite the side where anything was fed out. You knew that, didn't you? *A.* Yes, sir."

The jury returned a special verdict finding that the danger of getting his fingers caught in the rollers was not so obvious that the plaintiff, considering his age, intelligence, and experience, should have known and appreciated it; that the defendant failed to give the plaintiff such warning or instruction before the injury as would enable a person of his age and experience, exercising due care, to appreciate such danger; that such failure was the proximate cause of the injury; that the plaintiff was directed by George Diedrich to shift the air blower just before the accident; and that no lack of ordinary care on the part of the plaintiff proximately contributed to his injuries.

The court granted defendant's motion to change the answer to one of the questions of the special verdict, by which the jury found that the plaintiff was directed by George Died-

rich to shift the air blower just before the accident, and found this issue in the negative, and also granted defendant's motion to dismiss the complaint. This is an appeal from the judgment so ordered.

For the appellant there was a brief by *W. B. Rubin,* attorney, and *Wallace Ingalls* and *A. W. Foster,* of counsel, and oral argument by *Mr. Ingalls.*

For the respondent there was a brief by *Lawrence A. Olwell,* attorney and of counsel, and *Burr J. Scott,* of counsel, and oral argument by *Mr. Olwell.*

SIEBECKER, J.   The jury found that the plaintiff, a boy fourteen years and seven months of age at the time of the accident, in the light of his age, intelligence, and experience did not know or appreciate, and ought not to have known and appreciated, the danger of getting his fingers caught in the rollers, and that defendant was negligent in not warning and instructing him of this danger so as to enable him to have understood and appreciated it.   The duty of warning a servant of dangers does not apply to a servant who is familiar with the work and the tools and appliances, and does not apply when the dangers are well known to the servant and when they are such as he is fully capable of appreciating.   This rule is elementary and has received numerous applications in the decisions of this court, of which the following may be cited: *Rahles v. J. Thompson & Sons Mfg. Co.* 137 Wis. 506, 118 N. W. 350, 119 N. W. 289; *Dahlke v. Ill. S. Co.* 100 Wis. 431, 76 N. W. 362; *Wagner v. Plano Mfg. Co.* 110 Wis. 48, 85 N. W. 643.

In the foregoing statement, the evidentiary facts as to plaintiff's knowledge of the alleged danger and also defendant's want of care are presented.   There can be but one rational inference drawn therefrom as respects these two questions, which is that the plaintiff was fully informed of the alleged danger of his employment, and hence that warning

and instruction to inform him thereof so that he might appreciate the attendant hazard were not required to be given to him.    A study of the facts convinces us that the evidence fails to show that the defendant was guilty of any want of care which proximately caused plaintiff's injury, and that the jury's finding that defendant negligently omitted to give plaintiff needed instruction and warning is not supported by the evidence.    The evidence is within so narrow a compass and so directly to the point that discussion of it as to its probative effect and force can afford no assistance in drawing the legitimate inferences therefrom.    We are constrained to hold that the evidence fails to show a cause of action against the defendant upon the grounds alleged, and the judgment dismissing the complaint must stand.

*By the Court.*—Judgment affirmed.