### William A. Hines, appellant, v. Martel Telephone Company, appellee.

Filed June 15, 1934. No. 28949.

*Beghtol, Foe & Rankin,* for appellant.

*Chambers & Holland, contra.*

Heard before Goss, C. J., Good, Eberly, Day and Paine, JJ., and Tewell, District Judge.

Eberly, J.

This action sounds in tort, and arises out of an accident which occurred September 29, 1930. In the capacity of a telephone lineman at the time stated, plaintiff was in the act of climbing a telephone pole, which broke off under his weight and fell to the ground, causing the injuries in suit. In the district court, at the close of plaintiff's evidence, a verdict was instructed for the defendant, and from the order of that court overruling his. motion for a new trial, plaintiff appeals.

At the time of this accident plaintiff, Hines, was in the employ of the defendant, Martel Telephone Company, and the services then being performed by him were pursuant to a contract in writing which provided, in part, "That

the party of the first part (Martel Telephone Company) hereby employs the party of the second part (William A. Hines) to operate the telephone exchange of the Martel Telephone Company and to do all the necessary work keeping the lines and switchboard in good repair and working order. Party of the second part is to furnish all of his own tools, and is to furnish his own conveyance and his own gasoline in keeping the lines in repair and in good working order," in consideration of which, at the time of the accident, Hines was receiving $145 a month.

It also appears that after the accident of September 29, 1930, Hines instituted an action based on such accident against the Martel Telephone Company to secure an award of compensation under the terms of the Nebraska workmen's compensation act. In this proceeding a final judgment was entered in the district court for Lancaster county, after a hearing on the merits, in which it was adjudged by that court "That William A. Hines is not entitled to the benefits of the workmen's compensation law of the state of Nebraska, by reason of his said accident, for the reason that at the time of his said injury he was an independent contractor, and not an employee of the Martel Telephone Company, a corporation, within the meaning of the compensation law." It appears that no appeal was ever prosecuted from this determination.

This instant action was thereafter instituted by Hines expressly as an independent contractor against the telephone company as contractee to recover damages by reason of the injuries occasioned by the accident. On this appeal the action of the trial court is challenged as not sustained by the evidence, and contrary to law.

The record discloses that Hines, at the time of the trial in the district court, was 47 years of age; that his occupation was that of a telephone lineman; that he had continuously followed that line of work since 19 years of age; that he had had experience in climbing telephone poles and placing telephone wires on them ever since he commenced the work. He had observed the decay of tel-

ephone poles, knew their ordinary life, was familiar with the dangers to linemen by reason thereof, and was acquainted with the usual and approved precautions taken as to testing telephone poles by those engaged in his line of work before climbing the same in the performance of their duties. He came to Martel, Nebraska, with his family after entering into the contract with the defendant, arrived there in March, 1929, and took over the job. He was thereafter in immediate charge of the plant, and the only experienced telephone man connected with the defendant company at that place. For over a year he was the only man who climbed poles in line of duty connected with this organization. He knew at least for more than a year previous to the accident that the company had no records as to when their telephone poles were "set," and had no qualified servants (unless himself) charged with the duties of inspecting poles to determine their condition as to decay. It also appears that the telephone pole, the breaking of which caused his fall and injuries, was rotted and decayed at the ground line to such an extent that its natural strength was destroyed.

On the day of the accident it was planned to remove certain "cross-arms" from certain telephone poles and to replace them with "brackets." A helper and a truck for this purpose were furnished by the company. The party started from the "shop" where material, tools, and shovels were stored. There is no satisfactory proof that the work planned to be performed on this occasion was not work contemplated by the terms of plaintiff's contract of employment, and for which he was compensated under the terms thereof. Plaintiff also knew that the work contemplated at this time required the climbing of telephone poles, and that the approved practice required that each pole be tested prior to the lineman ascending the same. The company had no "pike pole," but did own shovels. Plaintiff made no suggestion as to taking the shovels, but did take his climbing belt and tools. The truck employed was owned by a Mr. Spellman, a retired farmer, 90 years

of age, and without experience in the telephone business. In plaintiff's evidence he is referred to as the "manager." When the party in the truck, consisting of Spellman, plaintiff, and Frye, the helper, arrived at the scene of the replacement, Mr. Hines testified the following occurred: "I don't think there was anything mentioned there only they said, 'Which one do you want?' and I said it didn't matter to me, and I believe they said, 'Well, you take this one or the next one,' and I said, 'Well, I will take this one if that is all right with the rest of you,' and they said, 'All right, go ahead and take it.' "

The cross-arm was removed from the first pole the plaintiff climbed, and brackets were substituted thereon without any difficulty. When plaintiff ascended the second telephone pole for the purpose of removing the cross-arm thereon, it broke off at the ground line, and plaintiff, falling to the ground, sustained the injuries for which recovery is sought.

By the law of this case, as well as by the force of plaintiff's pleading, this recovery is sought exclusively as by an independent contractor.

"In the law of negligence, the expression (independent contractor) is used, not merely in a descriptive sense, but as well to designate a relationship, in the presence of which, when established, the law undertakes to prescribe distinctive rights and liabilities. Generally the term signifies one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer, except as to the result of the work, * * * one who undertakes to produce a given result without being in any way controlled as to the method by which he attains that result." 31 C. J. 473.

Plaintiff's contract "to operate the telephone exchange * * * and to do all the necessary work keeping the lines * * * in good repair and working order" manifestly included in its scope poles, wires and fixtures. *Southern Bell Telephone & Telegraph Co. v. D'Alemberte,* 39 Fla.

25. He had been continually engaged in the telephone business as a lineman for more than 27 years; he was experienced and admittedly possessed of knowledge as to the life of telephone poles, the effect of decay thereon, and the dangers to be apprehended in ascending and working on them, which he fully appreciated. In addition, he well knew he was strictly the only telephone man on the job. Obviously, under these circumstances, the contractor was under no duty to warn him of the dangers of his work which were to him well known. *Budny v. American Candy Co.*, 151 Wis. 261.

Plaintiff also knew that no one in the employ of the defendant company, except himself, was charged with making inspections of telephone poles or performing work which required the operator to ascend such poles, when required so to do in order that the lines be kept "in good repair and working order." It seems a well-established principle that one cannot recover damages for an injury caused by defects which he himself had contracted to repair. *Broderick v. St. Paul City R. Co.*, 74 Minn. 163; *Saxton v. Northwestern Telephone Exchange Co.*, 81 Minn. 314.

It would seem that under the terms of his written contract, so far as essential to the keeping of defendant's telephone lines in good repair and working order, the duty of making the necessary inspections was imposed on plaintiff as an independent contractor, even to a greater degree than that imposed on an employee by virtue of his employment where the relation of master and servant exists. Indeed, we are committed to the view that "A person who contracts to perform labor or services for another is presumed to have so contracted in view of the risks ordinarily incident to or connected with the employment. He assumes all such risks." *Dehning v. Detroit Bridge & Iron Works*, 46 Neb. 556. See, also, *Creighton v. Keens*, 89 Neb. 637; *Anderson v. Union Stock Yards Co.*, 77 Neb. 196. So, too, where an experienced lineman accepts employment, knowing that the company made no

separate inspection of poles, he assumes the attendant risk of poles breaking. *Lynch v. Saginaw Valley Traction Co.*, 153 Mich. 174. And, likewise, one in the capacity of an independent contractor, contracting for work which necessarily involves and contemplates the climbing of telephone poles, assumes the risk of poles breaking, and should make his own proper tests for soundness before attempting to climb. *McIsaac v. Northampton Electric Lighting Co.*, 172 Mass. 89; *Cumberland Telephone Co. v. Loomis*, 87 Tenn. 504; *Britton v. Central Union Telephone Co.*, 131 Fed. 844.

As to the pole, the breaking of which caused the injuries for which recovery is sought, Hines testified as follows: "Q. And you did shake it? A. Yes. Q. And it didn't give in any manner that would indicate to you that you thought it was rotten? A. No, sir. Q. Why did you shake it? A. That is something that is customary in all line work—on old poles that way to test them. Q. That is the customary thing' for a lineman to do, isn't it, to shake a pole before he climbs it? A. Yes. Q. And you did that for the purpose of ascertaining whether or not the pole was safe to climb, didn't you? A. Yes, sir. Q. Now, you didn't rely on anybody else's word as to whether that pole was safe, did you? A. No, sir; I didn't. Q. You made a test yourself which you thought was sufficient to satisfy you as to whether the pole was safe or not? A. Yes, sir. Q. And after you made that test you climbed the pole? A. Yes, sir."

It also appears that by the approved use of the shovel by plaintiff the decayed portion of the pole at or below the ground level would have been discovered. The company had provided shovels which Hines, though knowing the work he was about to be engaged in and fully appreciating its dangers, wholly failed to take with the party for use in securing his safety. Because of his own neglect to use approved precautions to insure his safety against dangers obviously known to him, the accident happened and the injuries were sustained.

The controlling principle applicable to the situation, it may be said, is that, in an action brought by a contractor against the contractee, it is a valid defense that the conditions by which the injury in question was occasioned were known to and appreciated by the plaintiff, and that he is consequently chargeable with an implied assumption of the risks arising from those conditions. 44 A. L. R. 1122, note. See, also, *Hotchkin v. Erdrich*, 214 Pa. St. 460.

It is therefore obvious that under the admitted facts of the record before us, no recovery can be sustained, and the instruction of the trial court directing the return of a verdict for defendant was proper. *Fremont Brewing Co. v. Hansen*, 65 Neb. 456; *Rhine v. Schall Co.*, 96 Neb. 355; *Laf Ferry v. Chicago, B. & Q. R. Co.*, 114 Neb. 219.

The judgment of the district court is correct, and is

AFFIRMED.