LLOYD E. PETERSON, APPELLANT, V. BRINN & JENSEN COMPANY, APPELLEE.

277 N. W. 82

FILED JANUARY 12, 1938. No. 30158.

*Wear, Boland & Nye* and *Tyler & Peterson,* for appellant.

*Brogan, Ellick, Shoemaker & Fitzgerald, contra.*

Heard before GOSS, C. J., EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ., and MUNDAY, District Judge.

PAINE, J.

This is an action for personal injuries, brought against an employer whose traveling representative negligently caused the injuries to plaintiff by colliding with his car. The trial court sustained a motion for a directed verdict for defendant at the close of plaintiff's testimony, and plaintiff appeals.

The petition alleged the corporate existence of defendant; that on February 21, 1935, and for a long time prior thereto one John R. Porter was an employee, servant, and agent of defendant, and on said date said Porter, while acting within the scope of his employment and engaged in business of the defendant, negligently drove his car against and into an automobile in which plaintiff was then riding.

The amended answer admitted that defendant was a corporation; admitted the ownership by Porter of the Chevrolet coach, bearing an Iowa license number, involved

in the accident, and affirmatively alleged that Porter was hired by defendant company as a traveling salesman, and that he was not at any time during his employment under the control of the defendant company, and was not on any business of or for defendant at the time of the accident, and asks that the action be dismissed.

The plaintiff's testimony disclosed that at about 9 o'clock on the evening of the 21st day of February, 1935, the plaintiff, Lloyd E. Peterson, and his law partner, Varro E. Tyler, were returning to Nebraska City from Plattsmouth in a Plymouth automobile, driving at about 40 miles an hour; that at a point on U. S. Highway No. 75 about 8½ miles north of Nebraska City John R. Porter, driving about 65 miles an hour, over on the wrong side of the center of the road, crashed into their car, and plaintiff suffered serious injuries including the loss of an eye in the accident.

This appeal does not involve any question of negligence or the severity of the injuries. At the close of the plaintiff's evidence a motion for a directed verdict was sustained, and the assignments of error relate to that ruling.

It is the contention of the defendant that Porter was an independent contractor, which fact relieved defendant from all liability. Plaintiff insists that this disputed point was a question of fact for the jury to determine.

The plaintiff called as his witness Lothardt M. Jensen, who testified that he is vice-president of the Brinn & Jensen Company, defendant, which is a Nebraska corporation, engaged in the wholesale wrapping-paper business; that John R. Porter was employed by their company as a salesman, and that he was assigned to a particular territory, including in a general way Winnebago, Nebraska, on the north, Auburn, Nebraska, on the south, and Guthrie Center, Iowa, on the east. He testified that Porter used his own automobile, and covered his territory about every five weeks. He made collections, and had collected $10 for the company on the day of the accident. He testified that Porter was paid a commission, computed on the gross

profit to the company on his orders, and against this he had a drawing account; that if at any time the company was dissatisfied with his work he could be discharged.

In the brief of plaintiff several pages are taken up with conflicts in the testimony of Jensen as given at the hearing in the compensation case involving the same accident, that given by him in the case at bar, and his admissions made in a conversation with the plaintiff and his wife, wherein plaintiff asked him on March 20, 1935: "What is the fact with reference to whether Mr. Porter was in your employ on the night of this accident?" Mr. Jensen answered: "He was working for us; our men are in our employ day and night when they are on the territory." Plaintiff charges that Mr. Jensen made many denials of earlier testimony that he had given in the compensation case tried in Nebraska City, and set out in parallel columns in his brief conflicting portions of his evidence. The decision in that matter, which involved this same accident, was written by Judge Good, and is found in *Porter v. Brinn-Jensen Co.*, 131 Neb. 611, 269 N. W. 96, in which opinion compensation was denied.

It has been said: "Where an appellate court has put a construction on a certain contract in one litigation, ordinarily the same construction will be placed on the same contract in a different litigation between other parties." 14 R. C. L. 78, sec. 16.

It may be admitted at the outset that defendant's motion to direct verdict admits truth of plaintiff's evidence and every inference reasonably permissive therefrom, and the trial court, in ruling on such motion, must consider plaintiff's evidence in the most favorable light, and with strongest inferences reasonably deducible therefrom in plaintiff's favor.

This court has examined with care the evidence of Mr. Jensen, which it is claimed by plaintiff is conflicting. Considering all of his testimony with the other facts in the case, we do not reach the same conclusions in reference thereto as reached by plaintiff.

In *Stockwell v. Morris*, 46 Wyo. 1, 22 Pac. (2d) 189, a salesman for the Maytag company, driving his own automobile, collided with another. It is held in this case that, in determining whether a tort-feasor is a servant rather than an independent contractor, the test of the employer's control should be directed to the portion of the employment directly connected with the factor whereby liability is sought to be established.

Discussing the distinction between an employee and an independent contractor, the tests formerly given to determine that one was an independent contractor embraced such facts as whether he was called upon and performed work for any one he wished; whether he could perform the work himself, or employ others whom he paid; whether he or an employer had the right to discharge workmen whom he employed. This question has today become one of the most difficult which any court must solve. Not only is there a failure to agree upon the definition of these terms between the state courts, but the same court will be found to have handed down decisions which cannot be reconciled. The question as to whether one is a servant or an independent contractor is discussed in more than 25 separate annotations in the A. L. R. series of reports. The ones in 17 A. L. R. 621, 19 A. L. R. 226, 29 A. L. R. 470, 54 A. L. R. 627, 61 A. L. R. 223, and 107 A. L. R. 419, will be found helpful. Some cases state that the ultimate test is determined by the control reserved in the employer, and that one cannot be an independent contractor unless he is what the word indicates—independent of his employer in all the details relating to their relationship.

However, in some forms of employment the management reserves the right to give the most detailed instruction as to the manner and form in which the work is accomplished, even though there is no doubt whatever that the person so directed and instructed is an independent contractor, while on the other hand some high-grade employees have the greatest latitude in managing all of the details of their department as to employment of help and hours of labor

and methods employed, yet no one would argue that the head of such department was not strictly an employee. Therefore, it will be seen that the right of a person to control the progress of the work up to the final result is not always a true test. In fact, the words "independent contractor" have been so extended at the present time as to be almost a misnomer, and the term is often used simply to show that there are no contractual relations which would bind the principal.

In some cases relating to traveling salesmen, we find that a traveling salesman has been held to be an employee, even though he traveled on commission. Among them, in *Riggs v. Standard Oil Co.*, 130 Fed. 199, where an oil salesman was paid on a commission basis and had the right to employ others to do his work, he was held not to be an independent contractor.

But, in another case of a commission salesman, *Aldrich v. Tyler Grocery Co.*, 206 Ala. 138, 89 So. 289, 17 A. L. R. 617, he was held to be an independent contractor. Shook was a city salesman for the defendant company. He owned and maintained the automobile which caused the death of plaintiff's intestate. He was paid a percentage on orders taken and accepted. He collected bills due the company. The company was only concerned in the result of his efforts as a salesman. It did not control when, how, or where he secured the orders, except that he was not to work another salesman's trade. The method, means, and occasions of his calling upon the trade were left entirely to him, and it was held that such a salesman, whose movements are in no way controlled by his employer, is, with respect to the operation of his car, an independent contractor, so that his employer is not answerable for injuries caused by his negligent operation of the car.

In *Nettleship v. Shipman* (1931) 161 Wash. 292, 296 Pac. 1056, it was held that, where the control over a salesman was very general, the employer being interested only in the results obtained, and the salesman paying for the license for his automobile and all expenses, the defendant

should not be held liable under the doctrine of respondeat superior, and the action was reversed and dismissed.

In *Dohner v. Winfield Wholesale Grocery Co.* (1924) 116 Kan. 237, 226 Pac. 767, a grocery salesman, who was paid a salary of $175 a month and certain commissions, and who used his own automobile at his own expense, and whose movements were not controlled by his employer, except that he was required to make his territory once each week, was held to be an independent contractor with respect to his automobile. Other cases holding to the same rule are *Heinrich v. Pictorial Review Co.*, 326 Pa. St. 470, 192 Atl. 645, and *Wescott v. Young*, 275 Mass. 82, 175 N. E. 153.

The California court said that an automobile salesman, working on commission, with no expense account, but who was furnished gas and oil for his car, but not controlled as to where he should go to find prospects, was engaged in business for himself as truly as is a contractor who engages to construct a building, and was held to be an independent contractor. *Barton v. Studebaker Corporation* (1920) 46 Cal. App. 707, 189 Pac. (2d) 1025.

In *Wesolowski v. John Hancock Mutual Life Ins. Co.*, (1932) 308 Pa. St. 117, 162 Atl. 166, 87 A. L. R. 783, Adams was a solicitor of life insurance, on a salary of $15 a week and commissions. His territory was about a mile square, in the city of Philadelphia. The company had the right to his exclusive services and to fix his working hours. He sometimes walked and sometimes drove his Ford car. He collided with, and severely injured, a boy 15 years of age, who was riding a bicycle. The jury returned a verdict of $21,000 for the boy and $1,600 for his parents. Judgments entered in favor of the defendant company *non obstante veredicto* were upheld by the supreme court, the court saying that no former decision had been made by that court on the issues involved.

The real test of an independent contractor is whether or not the master has any authoritative control with respect to the manner in which the details of the work are to be performed, and this test must, in the last analysis, deter-

mine the essential nature of the relationship. 1 Labatt, Master and Servant (2d ed.) 56, sec. 18.

If but one inference can be drawn from the evidence, then the question of whether the relation is that of employer and independent contractor, or that of master and servant, is for the court. *Chicago, R. I. & P. Ry. Co. v. Bennett*, 36 Okla. 358, 128 Pac. 705, 20 A. L. R. 678.

In 1 Restatement, Agency, 11, sec. 2, is this definition: "(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking."

It is stated in the briefs that Judge Redick, as trial judge in the case at bar, based his ruling in the case almost entirely upon the case of *Pyyny v. Loose-Wiles Biscuit Co.* (1925) 253 Mass. 574, 149 N. E. 541, in which it was said that the defendant company was without right to direct the manner in which its traveling salesman should control his car, and assumed no obligation except to pay so much per mile for its operation; that it was the salesman's duty to obtain a license to operate his car, and to keep it in repair and pay the expense of operating it. He had no regular hours to work, and his time was his own, and his sole business was to sell for the defendant company. In the morning of the day of the accident he sold orders, then attended an Elks Field Day picnic in the afternoon, then went to a sales meeting, after which he started out in his automobile with a friend whom he had found at the picnic, and a collision occurred. A verdict given for the plaintiff was set aside, and judgment was entered for the defendant.

Many of the cases in which the *Pyyny* case has been cited with approval are collected in *American Nat. Ins. Co. v. Denke* (1936) 95 S. W. (2d) (Tex. Com. App.) 370. The gist of these decisions is that the employee is not an agent of his employer in respect to the operation of his automobile, but is an independent contractor.

A late case, decided in June, 1937, is *Kennedy v. American Nat. Ins. Co.,* 107 S. W. (2d) (Tex.) 364, which held that recovery might have been had if representative had been using his own automobile within the scope of his employment at the time of the accident, for he must be driving at the time in discharge of duties of his employer.

Coming now to our Nebraska cases, we find that in *Showers v. Lund,* 123 Neb. 56, 242 N. W. 258, many Nebraska cases have been cited to prove that there is no hard and fast rule by which to determine whether one sustains the relation of an employee or that of an independent contractor.

In *Schou v. Village of Hildreth,* 127 Neb. 784, 257 N. W. 70, it was held that one engaged by the village to care for a swimming pool, whose compensation was $20 for three months plus the receipts of the pool, is an employee, and not an independent contractor.

The term "independent contractor" signifies one who contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the result of the work. *Hines v. Martel Telephone Co.,* 127 Neb. 398, 255 N. W. 233; *Bodwell v. Webster,* 98 Neb. 664, 154 N. W. 229.

In the case of *Priest v. Business Men's Protective Ass'n,* 117 Neb. 198, 220 N. W. 255, the wife of an insurance solicitor was denied compensation for his death. Many cases from Nebraska and other states were reviewed in this opinion, holding that Priest was an independent manager of their insurance agency, not subject to the company's control as to the manner in which such agency should be conducted.

In the case of *Aeschleman v. Haschenburger Co.,* 127 Neb. 207, 254 N. W. 899, a drug salesman selling on commission was held by this court to be an employee, and not an independent contractor. An examination will show the difference between the position of the salesman in this case and the case at bar, for in this case he was required to make certain calls each week, and to be at the home

office each week end, where he assisted in the work in the office. He was required to keep in constant touch with the office, and occasionally was ordered to make emergency service calls. This court said that the character of supervision exercised by his employer made the relationship a closer one than that in *Johnston v. Smith*, 123 Neb. 716, 243 N. W. 894, and *Christensen v. Protector Sales Co.*, 105 Neb. 389, 181 N. W. 146.

We believe that we are well supported by the authorities in declaring that, where the proof fails to establish that a traveling salesman was acting within the scope of his employment, or engaged in any business for his employer, at the time of committing the negligent acts charged, the employer cannot be held therefor, and the judgment of the trial court is

AFFIRMED.