PETROW & GIANNOU ET AL., APPELLANTS, V. WILLIAM
SHEWAN, APPELLEE.

FILED APRIL 19, 1922.   NO. 22523.

1.  Master and Servant: "INDEPENDENT CONTRACTOR." An independent
    contractor is generally distinguished from an employee as being a
    workman who contracts to do a particular piece of work according
    to his own method, and is not subject to the control of his em-
    ployer, except as to the results of the work.

2.  ———: ———. A plumber who undertakes to install a floor
    drain and sink for a confectionery storekeeper, and agrees to pro-
    cure and furnish the necessary materials, and has no specific agree-
    ment for compensation other than the understanding that he is to
    receive pay for the materials furnished and the usual plumber's
    charges, and when no hours of employment are agreed upon, and
    there appears to be no right to control the manner or method of
    his doing the work, is an independent contractor, and not an em-
    ployee, within the meaning of the term "employee," as used in
    the workmen's compensation law.

3.  ———: ———. The act of the employer in giving such direc-
    tions as may be found necessary to secure compliance with the
    contract, according to the plan adopted by him and agreed upon
    between the parties, is not necessarily inconsistent with the ex-
    istence of the status of his workman as an independent contractor.

4.  ———: CASUAL EMPLOYMENT. The rendition of such service by a
    plumber, under circumstances constituting him an employee, would
    not bring him within the act, for his employment by a candy
    shopkeeper in such nature of work, which required for its comple-
    tion only 20 hours, would constitute casual employment and be
    within the exception of the statutes (Rev. St. 1913, sec. 3656, as
    amended by Laws 1917, ch. 85, sec. 4), as it stood prior to the
    amendment of 1921.

APPEAL from the district court for Douglas county:
WILLIS G. SEARS, JUDGE. *Reversed and dismissed.*

*Montgomery, Hall & Young,* for appellants.

*Robert A. Nelson* and *W. H. Herdman, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, DAY and FLANSBURG, JJ.

FLANSBURG, J.

This was an action under the workmen's compensation law. The plaintiff, William Shewan, recovered an award before the compensation commissioner, and an appeal was taken to the district court, where the matter was tried, the award confirmed, and a decree entered in favor of the plaintiff. The defendants, Petrow & Giannou, have appealed to this court.

The first question presented is whether or not the plaintiff was an employee of the defendants, as distinguished from an independent contractor.

The evidence is substantially without conflict. The defendants conduct an ice cream, soda and candy shop on Farnam street in the city of Omaha. They planned to fit up a small adjoining room, to be used in conjunction with their business. The room was to have a cement floor, certain plumbing fixtures, a sink, and a floor drain. Defendant Giannou spoke to Mr. R. W. Shewan, the father of the plaintiff, who was the engineer of the building in which the candy shop was located, and asked him if he could not do the plumbing for them. He replied that he was not a member of the union, but that his son was a plumber and could do the work. Defendant Giannou then requested that he ask his son, the plaintiff, to do the work. No mention was made as to what the rate of pay would be, nor as to what would be the total cost. Mr. Shewan that evening delivered the message to plaintiff, and the next morning plaintiff appeared at the candy shop. He went with Mr. Shewan and the defendant Giannou to the room where the work was to be done, and what was wanted was explained to him. Defendant told him to go ahead and do the work and to secure whatever material was necessary and defendants would pay for it. Nothing was said about the wages to be paid the plaintiff, although defendant testified that

he expected to pay plumber's wages; nor was anything said about the work being done for a lump sum. Plaintiff worked during that day, and late in the afternoon sustained an injury to his eye. He went immediately with his father to a doctor. No report of the injury was made to the defendants for two or three days afterwards. At that time, having noticed that the work was not proceeding, they inquired of Mr. Shewan and were informed that plaintiff had sustained injury. They told Mr. Shewan that the work would have to go on, as they were in need of its being finished and ready for use. The plaintiff, being informed of this, thereupon sent another plumber to finish the job. This man went to the candy shop; he reported to no one, but immediately commenced upon the work, and after working a day and a half completed it. Only once during his work did he have any conversation with either of the defendants, and this conversation was when defendant Giannou entered the room and stated that the floor drain would have to be raised a little above the floor, for the reason that the floor was to be cemented. After the work was completed, the plaintiff rendered a bill, showing cost of materials of $24.50, and showing 20 hours' labor at $1.25 an hour, being according to the union scale of wages for plumbers. This included 8 hours' labor for himself, and 12 hours for his substitute. The bill, inclosed in an envelope, was delivered to the defendants by Mr. Shewan, the plaintiff's father, who testified that he did not look at the bill, nor know of its contents. The defendants drew a check in favor of plaintiff's father, he having stated that it was immaterial whether the check should be made out to him or to his son. The check was delivered by him to the plaintiff. The plaintiff paid the plumber who completed the work $15 for 12 hours' work.

The issue as to whether or not a workman is an employee, as distinguished from an independent contractor, is to be determined from all the facts in the case. There is no single test by which that determination can be made. An independent contractor is generally distinguished as being

a workman who is independent in his employment; one who contracts to do a particular piece of work according to his own method, and is not subject to the control of his employer, except as to the results of his work. He is not in such a case a servant of his employer; nor can he be controlled by the employer in the manner of doing the work, except to the extent that the employer has the right to give such directions as may be found necessary to insure compliance with the contract. *Barrett v. Selden-Breck Construction Co.*, 103 Neb. 850; *Knuffke v. Batholomew*, 106 Neb. 763; *Powley v. Vivian & Co.*, 154 N. Y. Supp. 426. As particularly applicable to the facts in this case, see *Roberts v. Industrial Accident Commission*, 197 Pac. (Cal. App.) 978; *Otmer v. Perry*, 94 N. J. Law, 73; *Matter of Litts v. Risley Lumber Co.*, 224 N. Y. 321; *Helton v. Tall Timber Lumber Co.*, 148 La. 180; *City of Groesbeck v. Pinson*, 21 Tex. Civ. App. 44.

The defendants in this case were not plumbers. They were not contractors nor builders, and did not understand the manner in which plumbing should be done. In no way did they attempt to control, nor did their agreement give them the right to control, the plaintiff as to the methods, means or procedure to be employed. The plaintiff was employed to do the specific work as an entirety. The question of the time which would be consumed in doing the work was not mentioned; nor was the total cost. The defendants quite evidently gave to him the right to conduct the work as he saw fit, according to his own methods. He was to procure the necessary materials, and the defendants were to pay for the materials and pay the reasonable plumber's charges for the work done. Though the defendants, as the testimony in their behalf shows, understood their contract to mean that the plaintiff was to receive pay at the rate of regular plumber's wages per hour, still the measure or method of payment, though often insignificant, is not a controlling criterion as to the relationship between the parties. It is significant that when the plaintiff was injured, he, himself, arranged for a substitute

to complete the work, and that his substitute worked apparently for him, and not for the defendants. The substitute did not report to the defendants before entering upon the work, nor did he render them a bill after he had finished. The plaintiff paid him for the time that he was employed, and rendered a statement to the defendants, covering the entire cost of materials, and of the labor contributed both by himself and by his substitute.

The parties construed their contract as one whereby the plaintiff agreed to perform the work according to plan. It was not material that he personally perform it, but, within the contemplation of the parties, that he should accomplish it in the manner he pleased, and employ a helper or a substitute, should he desire. After he sustained his injury and quit work, it was several days before the defendants made inquiry as to why the work was not progressing. It is evident from this that the plaintiff was recognized as having the right to control his own time in applying himself to the work. The defendants did not keep time over him, nor employ him for specific hours. He accepted the contract as an entirely and would not have been subject to discharge by the company because he did the plumbing work in one way, rather than in another, so long as the substantial results contemplated by the contract were attained by him.

It is argued that the defendants retained the right of control over the plaintiff, as is evidenced by the fact that one of the defendants at one time appeared in the room where the work was going on and directed that the floor drain would have to be raised a little above the floor, since the floor was to be cemented. The giving of such instructions by the defendant, however, would not be inconsistent with a relationship of the plaintiff toward them as an independent contractor, since, were he an independent contractor, the defendants would have had the right to instruct him as to what had to be done, so as to secure the fulfilment of their contract. This could be and was done in this case, without in any way interfering with the plain-

tiff's right to perform the contract in whatsoever manner or by what method he chose.

The facts in the case of *Knuffke v. Bartholomew, supra,* differ from the case at bar. In that case the applicant was employed to do plastering at $1.25 an hour. The employer expressly agreed to erect the scaffolding and to furnish a helper. To that extent at least he controlled and directed the method of doing the work. The work on the building was in charge of a general foreman, who, the court said, would have had supervision over the work to be done. The court construed that contract as one for labor at so much wages an hour, and not as a contract to do a specific piece of work as an entirety at so much compensation, measured by a specific rate per hour, and found it within the contemplation of the parties that the employer had retained the right to control the manner and method of doing the work, and to discharge the employee at will.

As has been pointed out, those elements do not exist in this case, and it is our opinion that the plaintiff here was an independent contractor, and therefore not an employee, within the meaning of that term as used in the workmen's compensation law.

The plaintiff's counsel further contends that the evidence is sufficient to show that Mr. Shewan, father of the plaintiff, was, himself, the independent contractor, and that the plaintiff was his employee, and that, therefore, as Mr. Shewan had not been required by the defendants to take out insurance to cover his employee, as is made necessary by the compensation law, the defendants' firm became, under the terms of the law (Rev. St. 1913, sec. 3657) an employer. The evidence, as we view it, however, is entirely insufficient to sustain that contention. It appears that Mr. Shewan only acted as the agent of the defendants in procuring his son to do the work. His own testimony shows that he had nothing whatsoever to do with the work or the direction of it; nor did he receive any pay. He did not agree to perform the work; in fact, he stated that he would not engage upon such an undertaking, as he did not desire to

court trouble with the plumbers' union. It clearly appears that all he did was to deliver the word to his son, so that his son might undertake the work himself.

For still another reason, as contended by the defendants, the plaintiff would not be entitled to recover under the compensation law, even though the relation of master and servant had been found to exist. Such an employment would have been casual, and therefore within the exception to the compensation law. The act, prior to the amendment of 1921 (Laws 1921, ch. 122) excluded from its operation "any person whose employment is casual, or not for the purpose of gain or profit by the employer, or which is not in the usual course of the trade, business, profession or occupation of his employer. The term 'casual' shall be construed to mean 'occasional; coming at certain times without regularity, in distinction from stated or regular.'" Rev. St. 1913, sec. 3656, as amended by Laws 1917, ch. 85. This section declares three specific and distinct exceptions to the act. One exception is where the employment is casual; another where it is not for the gain or profit of the employer; and another where the employment is not in the usual course of the trade, business, profession or occupation of the employer. Each exception, by the provision quoted, is independent unto itself, and it is unnecessary, in determining whether an employee comes within one exception, to determine the question as to how far he comes within the other exceptions. In determining whether or not the employment is casual, under that provision, it is, therefore, unnecessary to determine whether the employment, or service rendered, was in the usual course of the employer's business. It is proper, however, in determining whether the employment is casual, to consider the nature of the service to be rendered, as it has a distinct bearing upon the question of the regularity of the service in the particular business. In this case, the fitting up of an adjoining room to accommodate the business of the defendants was a service which, by its very nature, is one which could happen only on rare occasions. The employment of

the plaintiff to do that work would not connect him with any regular work of the employer, nor could he be considered a regular employee. Where a person enters the employment of another to render a particular service, that is not continuous or regular but only occasional or incidental to the business, the scope and purpose of the employment, as well as the fact that the employment is temporary and for the occasion only, are important considerations in determining the question as to whether the employment is casual.

Under our decisions, as well as the decisions in those states where the statutes were essentially similar to our statute as quoted, employments of a kind and duration, such as are shown in this case, have been quite generally held to be casual in their nature, and therefore excepted from the operation of the workmen's compensation laws. *Bridger v. Lincoln Feed & Fuel Co.*, 105 Neb. 222; *Gaynor's Case*, 217 Mass. 86; *Western Union Telegraph Co. v. Hickman*, 248 Fed. 899; *Aurora Brewing Co. v. Industrial Board*, 277 Ill. 142; *Porter v. Mapleton Electric Light Co.*, 191 Ia. 1031; *Oliphant v. Hawkinson*, 192 Ia. 1259; *Herbig v. Walton Auto Co.*, 191 Ia. 394; *Consumers Mutual Oil Producing Co. v. Industrial Commission*, 289 Ill. 423.

For the reasons given, we find it necessary that the judgment be reversed and the cause dismissed.

REVERSED AND DISMISSED.