ARCHIE G. POTTER, APPELLEE, v. SCOTTS BLUFF COUNTY, APPELLANT.

FILED JUNE 24, 1924. No. 23923.

Master and Servant: WORKMEN'S COMPENSATION LAW: INDEPENDENT CONTRACTOR. One who contracts with a county to furnish tools, appliances and labor, to load, haul and evenly spread 1,500 cubic yards of gravel from designated pits upon a designated highway, for the sum of 49 cents a cubic yard; who may perform the work himself or hire others to do it; who may employ as many men or teams or motor trucks to do the work as he pleases; who has the right to hire and discharge men, fix their wages and hours of labor, and is liable for their compensation; and who has the power to direct when and where the men shall work, is, within the meaning of the workmen's compensation law, an independent contractor.

APPEAL from the district court for Scotts Bluff county: P. J. BARRON, JUDGE. *Reversed and dismissed.*

*William H. Heiss, Jr.,* for appellant.

*Glebe & Elliott, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DAY and GOOD, JJ.

GOOD, J.

Defendant appeals from an allowance, made under the workmen's compensation law, to plaintiff for injuries received by him while engaged in a road-graveling job for defendant.

Defendant argues that plaintiff at the time he received

the injuries was not an employee of the county, but was either an independent contractor or an employee of such contractor.

The pertinent facts, as shown by the record, are substantially as follows: Defendant county desired to gravel two and one-half miles of highway east of the village of Minatare, and within the county, and caused a notice to be published that it would, at a fixed date, receive bids for hauling 1,500 yards of gravel, to be evenly spread over two and one-half miles of highway, which was accurately described in the notice. The notice, among other things, contained the following: "The work will consist of loading, hauling, dumping and spreading the gravel according to instructions of county highway commissioner. All work will be paid for by the cubic yard of gravel in place; * * * contractors to furnish all tools and labor to complete the work." The gravel was to be obtained from designated pits and paid for by the county. Pursuant to the notice, I. N. Wallace and S. J. Medlin filed a written bid, offering to do the work for 49 cents a cubic yard, which bid was accepted by the county. No formal contract was entered into. It is evidenced only by the notice, bid, and record-acceptance thereof.

It appears that prior to the making of the contract plaintiff had some conversation with Wallace and Medlin, in which he told them that if they got the job he would take his teams and help them. For some undisclosed reason Medlin seems to have dropped out and taken no part in the work, and plaintiff became associated with Wallace in the job. Plaintiff testified that he was hired by Wallace, and further testified: "He was supposed to pay me 75 cents a day for my teams and board them, and if he made anything he was to pay me a certain amount of wages—probably $20 a week." He further testified that he was to receive a share of the profits, but did not definitely state the proportion that he was to receive. From the whole of plaintiff's testimony, it fairly appears that Potter and Wallace were in partnership in the undertaking. Some time after the work was underway, the county made a partial payment by check

or warrant, which was drawn payable to Potter and Wallace, and was received and indorsed by plaintiff and deposited in a bank to the credit of Potter and Wallace. This fund was drawn out by checks for the payment of feed and provisions for the teams and men. After plaintiff was injured, additional partial payments for the work were made by checks or warrants drawn in like manner and cashed by Wallace. It also appears that in the prosecution of the work five teams of horses were used, four of which belonged to plaintiff and one to Wallace, and that four other men, who were each to receive $1.50 a day and their board, were employed by Wallace or by plaintiff and Wallace together. The teams, wagons, tools and appliances were all furnished by plaintiff and Wallace, except one dump wagon, a pick and a shovel. Whether this wagon, pick and shovel were the property of the county or of the state, which was also interested in the project, is not made clear. The part of the work performed by plaintiff was principally helping to load the gravel and assisting, with an extra team, in getting the loads out of the pits. While loading gravel he was injured by an overhanging ledge of frozen earth falling upon him. The four hired men did the hauling, dumping and spreading. What particular part of the work was performed by Wallace is not disclosed. Plaintiff testified that he talked to the highway commissioner but once, when he came to the pit and said the gravel was too fine, and directed that the gravel be taken from another nearby pit. It appears that the teamsters were directed in their work by plaintiff and Wallace, except that the highway commissioner may have directed where the gravel should be dumped. Plaintiff contends, since the county reserved in the contract the right to instruct how and where the work should be done, that it was an employer, and that he was an employee, and not an independent contractor.

Whether one is an employee or an independent contractor must be determined from the circumstances of each particular case. It is sometimes quite difficult to distinguish whether the relation is one of employee or that of an independent contractor. This particular question has received

the consideration of this court on several occasions. In *Barrett v. Selden-Breck Construction Co.,* 103 Neb. 850, it was held: "The right to supervise, control, and direct the work is one of the tests for determining whether a person is an independent contractor or an employee, but it is not the sole and only test." In the course of the opinion it was said (p. 855): "There is no one criterion known to the law, but several elements may enter into the determination. A test is whether the contract requires the work to be done by the particular person contracting, or whether his personal services are not required, and any person whom he may employ may, under the agreement, do the job."

In *Bodwell v. Webster,* 98 Neb. 664, it was held: "An 'independent contractor' is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer, except as to the result of the work.

"While the existence or the absence of the right of the employer to control the work is a usual test to determine whether the workman is a servant or an independent contractor, the right of the employer to discharge him, the absence of an independent occupation, and the mode of compensating him and his subordinates, may be factors indicating the true relation."

In *Knuffke v. Bartholomew,* 106 Neb. 763, it was held: "On the issue as to whether a workman is an employee as distinguished from independent contractor, his relation to his employer should be determined from all of the facts, rather than from any particular feature of the employment service."

In *Petrow & Giannou v. Shewan,* 108 Neb. 466, it was held: "An independent contractor is generally distinguished from an employee as being a workman who contracts to do a particular piece of work, according to his own method, and is not subject to the control of his employer, except as to the results of the work.

"A plumber who undertakes to install a floor drain and sink for a confectionery storekeeper, and agrees to procure and furnish the necessary materials, and has no specific

agreement for compensation other than the understanding that he is to receive pay for the materials furnished and the usual plumber's charges, and when no hours of employment are agreed upon, and there appears to be no right to control the manner or method of his doing the work, is an independent contractor, and not an employee, within the meaning of the term 'employee,' as used in the workmen's compensation law.

"The act of the employer in giving such directions as may be found necessary to secure compliance with the contract, according to the plan adopted by him and agreed upon between the parties, is not necessarily inconsistent with the existence of the status of his workman as an independent contractor."

The subject is also fully treated in the following cases and the elaborate notes attached thereto: *Davis v. Industrial Commission* (297 Ill. 29) 15 A. L. R. 732; *Nichols v. Hubbell, Inc.* (92 Conn. 611) 19 A. L. R. 221; *Gall v. Detroit Journal Co.* (191 Mich. 405) 19 A. L. R. 1164; and *Chicago, R. I. & P. R. Co. v. Bennett* (36 Okla. 358) 20 A. L. R. 678.

In the instant case it will be observed that the contract did not require the work to be performed by the contractors, but they might employ others to perform the work. No particular time was stipulated within which the work should be performed. The contractors or their employees could work to suit their own convenience; keep their own time; determine during what hours they should perform the work; determine what days they should or should not work; determine whether the gravel should be hauled by teams or motor trucks; determine the size of the loads and have control over all of the details of performing the labor. They were at liberty to hire as many men as they saw fit. They might have completed the work within a week or might have taken 60 to 90 days in which to do it. They were at liberty to determine the wages they would pay to the hired men, the price they would pay for teams, and were to furnish their own tools and equipment. On the other hand, while the contract specified that the work

should be done subject to the instruction of the county highway commissioner, it is apparent that his only concern, or the county's concern, was in seeing that the proper kind and amount of gravel was evenly distributed over the highway. The county had no control over the men; could not hire or discharge them; could not determine the number who should be employed; could not determine how many teams should be operated; could not determine the hours of labor, the size of loads, or any of the other details. Under the circumstances, we are clearly of the opinion that plaintiff was not an employee of the county, but was an independent contractor.

We have not overlooked the argument of plaintiff that, where a question of fact is determined by the trial court, in a case under the workmen's compensation law, its finding is equivalent to the verdict of a jury. Under the circumstances disclosed by the record, in our opinion, no other finding than that the plaintiff was an independent contractor can be sustained. Where the evidence clearly shows, beyond question, that the claimant under the workmen's compensation law is, in fact an independent contractor, and not an employee, a contrary finding by the trial court cannot be upheld.

The judgment of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED..

Note—See Workmen's Compensation Act. p. 50, sec. 42.