BEULAH LOWE, ADMINISTRATRIX, APPELLEE, V. CHICAGO LUMBER COMPANY OF OMAHA, APPELLANT.

283 N. W. 841

FILED FEBRUARY 10, 1939. No. 30595.

*Frederick M. Deutsch,* for appellant.

*Wagner, Wagner & Albert* and *Carroll Thompson, contra..*

Heard before SIMMONS, C. J., ROSE, CARTER, MESSMORE. and JOHNSEN, JJ.

MESSMORE, J.

The administratrix of the estate of Charles E. Lowe brought an action to recover compensation, arising out of the death of Charles E. Lowe. The compensation court denied the claim, and on appeal to the district court for Platte county, an award was granted, from which the defendant appeals.

Plaintiff's petition is usual in form. The answer is a general denial and a specific denial that the deceased was in defendant's employ at the time of receiving the injury resulting in his death. The reply to the answer pleaded estoppel, and reference will be made thereto in the opinion.

The record discloses a contract made by the Penn Mutual Life Insurance Company with the defendant Chicago Lum--

ber Company of Omaha, a corporation, wherein the latter agreed to build a barn on the Hill farm in Platte county, Nebraska, which was owned by said insurance company, for the sum of $1,325, furnish all necessary material and carry compensation insurance "to cover all workmen engaged on such work." On or about June 2, 1937, the defendant entered into a contract with Charles E. Lowe, wherein the said Lowe agreed to supply all the labor to build, and agreed to supervise construction of, a barn on the Hill farm in Platte county, according to a plan furnished by defendant. The size of the barn and the general specifications are covered at some length in the contract, and following the general specifications appears this language: "The intention of this contract is that the barn shall be built by party of the first part, substantially and according to plan as near as feasible to make a satisfactory and good job. Anything necessary in line with regular construction not mentioned herein shall be accomplished by the party of the first part to insure a complete job." The contract also provided that Charles E. Lowe was to receive the sum of $325 and contained the following language: "Party of the second part (defendant) further agrees to carry full workmen's compensation Insurance and Public Liability Insurance, without cost to C. E. Lowe." The contract further provided that the work was to be completed in 60 days from May 24, 1937; the old barn on the farm was to be torn down, and all sound lumber therefrom was to be used in the construction of the new barn.

Before the contract was signed, the manager of the defendant and Mr. Lowe inspected the premises and the old barn thereon, and the manager designated the lumber from the old barn that would be used in the construction of the new barn. The work of razing the old barn was commenced June 5, 1937. Several changes were made in the construction of the barn to suit the tenant, and at times, when Mr. Lowe and his son would call at the lumber office of the defendant at St. Edward, Nebraska, the manager of the defendant and Mr. Lowe would talk over the changes

required by the tenant. The barn was to be built to suit the convenience of the tenant. During the course of construction of the barn many changes were suggested by the tenant and some by defendant's manager, which were talked over at the lumber office by Lowe and the manager; such changes were made. Most of them provided for the placing of doors at different points, enlarging the mangers, providing for a cement floor in front of the cattle stalls, and making a grain bin instead of a horse stall at one point, and other changes. While the changes were numerous, in most instances no greater amount of material or labor was necessary to complete them; no extra charge was made by Mr. Lowe, and nothing was said as to an additional charge with the exception of a charge for a cupola, placed on the barn, for which Mr. Lowe received $5. The record does not disclose exactly when or how the changes were agreed upon. The manager of defendant left about June 15, 1937, on a vacation and returned a few days after Mr. Lowe's death. No representative of the defendant was on the premises after the signing of the contract. On July 7, 1937, Mr. Lowe was working on a hay fork hood, putting on siding, when the scaffolding on which he stood gave way, severely injuring him, and from such injuries he died July 17, 1937. After his death his son, who was then working on the job, went ahead and completed it.

While the manager of defendant was on his vacation and after Mr. Lowe fell, one Wright was at the yard and apparently in charge. Wright went on the premises at one time and told the deceased's son how the hay door should be constructed, and the manner in which it would be most solid and hang the best. The son followed his directions. No other direction was given by Wright. Defendant's manager went on the premises once after Mr. Lowe's death, while the son was completing the job, and at that time talked about the changes in the mangers and the hardware needed to complete the barn, and some conversation was had about a cement floor in the horse barn which was not placed therein.

The plaintiff offered in evidence exhibit 2, a statement to the Penn Mutual Life Insurance Company for the construction of the barn, dated August 9, 1937, in an account with the defendant. This statement showed a total amount of $1,391.08 and contained the following: Workmen's compensation insurance on $330, $20.26; public liability insurance on $330, 82 cents. There was also offered in evidence exhibit 4, purporting to be copy of a letter written by the defendant to New Amsterdam Casualty Company under date of June 10, 1937, informing the company that defendant had taken a building contract for labor and material on a farm building on the Hill farm, the letter containing the following paragraph: "A complete record of the labor on this job will be sent in to our Omaha office and will be on file here for your auditor when he audits our payroll."

After the barn was completed and all expenses paid by the administratrix, there remained, including $5 for saving of lumber and $5 for the cupola, the net sum of $110. When Mr. Lowe was living he employed, besides himself and son, three men. At the time of his fatal injury, the deceased had worked 20 days. The evidence also establishes that Mr. Lowe was the sole and only support of his wife and two sons, 16 and 19 years of age, respectively. On the foregoing evidence the district court made an award.

The defendant contends that the decision of the trial court is contrary to and not sustained by the evidence and the law; that deceased was not an employee within the contemplation of the workmen's compensation act of this state but was an independent contractor, citing *Prescher v. Baker Ice Machine Co.*, 132 Neb. 648, 273 N. W. 48, wherein this court held: " 'An independent contractor is one who renders the service in the course of an independent occupation, representing the will of his employer only as to the result of the work, and not as to the means by which it is accomplished.' *Reeder v. Kimball Laundry*, 129 Neb. 306, 261 N. W. 562;" and one "who has the right to employ his own assistants; who has the right to determine the

hours of labor; and who has the power to direct how and when the detail of the work shall be performed is an independent contractor within the meaning of the workmen's compensation law." In the opinion in the *Prescher* case we find this language (p. 650) :

"Whether the deceased was an employee or an independent contractor cannot be decided by a hard and fast rule. The relationship can only be established by a consideration of the facts and circumstances of the case. *Showers v. Lund,* 123 Neb. 56, 242 N. W. 258. An independent contractor usually enters into a contract to do a specified piece of work for a specific price; makes his own subcontracts; employs, controls, pays and discharges his own employees; furnishes his own tools and materials; and directs and controls the execution of the work. * * *

"The one indispensable element to his character as an independent contractor is that he must have contracted to do a specified piece of work for a specific price."

The case of *Petrow & Giannou v. Shewan,* 108 Neb. 466, 187 N. W. 940, in substance held that the distinction between an independent contractor and an employee is that an independent contractor contracts to do a particular piece of work according to his own method, and is not subject to the control of his employer except as to the results of the work. It was further held: "The act of the employer in giving such directions as may be found necessary to secure compliance with the contract, according to the plan adopted by him and agreed upon between the parties, is not necessarily inconsistent with the existence of the status of his workman as an independent contractor." It was said that the issue as to whether or not a workman is an employee, as distinguished from an independent contractor, is to be determined from the facts in each case.

In *Potter v. Scotts Bluff County,* 112 Neb. 318, 199 N. W. 507, the opinion at page 321 cites *Barrett v. Selden-Breck Construction Co.,* 103 Neb. 850, 174 N. W. 866, wherein it was held: "The right to supervise, control, and direct the work is one of the tests for determining whether a person

is an independent contractor or an employee, but it is not the sole and only test. * * * A test is whether the contract requires the work to be done by the particular person contracting, or whether his personal services are not required, and any person whom he may employ may, under the agreement, do the job."

In the instant case, as provided by the contract, Charles E. Lowe agreed to supply all labor with which to build the barn and agreed to supervise ("to oversee for direction; to superintend; to inspect with authority." Webster's New International Dictionary) construction of the barn. There was a designated time in the contract for the barn to be completed, viz., 60 days from May 24, 1937. He employed all of the workmen, fixed their hours of work and the amount of their wages. He had control over the construction of the barn, and by the contract he agreed that the barn would be built "substantially and according to plan, as near as feasible ("capable of being done, executed, or effected." Webster's New International Dictionary), to make a satisfactory and good job;" also to do "anything necessary, in line with regular construction not mentioned" in the contract, "to insure a complete job." It was generally understood by the manager of defendant and Mr. Lowe that the barn was to be constructed for the convenience of the farm and the tenant thereon, and changes, such as were made, were within the contemplation of the parties. Mr. Lowe was satisfied with the general changes and did not make an additional charge therefor. He contracted to do a specified piece of work for a specific price, namely, $325. The manager of the defendant did not interfere with the progress of the work, did not control or supervise it, and during most of the period when Mr. Lowe was constructing the barn the manager was on a vacation and was not on the premises until after the son had taken over the work. Mr. Wright did not control or supervise the work, and the instructions given by the manager of defendant or Wright were such as were necessary to insure compliance with the contract according to the plans and specifications

thereof, adopted by the parties, and not inconsistent with the existence of the status of Mr. Lowe as an independent contractor. He was working for a profit; it was up to him to determine the amount of that profit by his saving on labor, time, etc. No definite wage was fixed for him. He knew the amount he was to receive upon the completion of the barn. The construction of this barn was his own independent business.

Plaintiff, by reply to the answer, alleged that the defendant verbally stated to Charles E. Lowe that it would carry compensation to protect him and all persons assisting in the construction of the barn; that Charles E. Lowe entered into the contract in reliance upon said statement, and that by reason thereof the defendant is estopped to deny that Lowe was working on construction of the barn other than as an employee of the defendant herein. The contract is not ambiguous, and if Mr. Lowe, himself, as an independent contractor, was carrying compensation insurance, he would be carrying it for the benefit of his employees, and no personal recovery for injuries received by him would have been had by him thereunder. As part of the consideration for the contract, the defendant agreed to carry compensation insurance to cover workmen in the construction of the barn and relieve Mr. Lowe of such responsibility. There is no evidence in the record that any statement was made to him to lead him to believe that he was, or would be, covered by such insurance carried by this defendant.

*Speas v. Boone County,* 119 Neb. 58, 227 N. W. 87, is cited, to the effect that the workmen's compensation act should be liberally construed, so as to obtain the accomplishment of its beneficent purpose. The court cannot create a liability where the law creates none. See 2 Schneider, Workmen's Compensation (2d ed.) p. 2130.

Appellee cites and relies on the case of *Habrich v. Bent,* 200 Wis. 248, 227 N. W. 877, stating that there is a great similarity between such case and the case at bar. In the *Habrich* case there was no written contract, and defendant

Bent was to complete the work started by Habrich on three branch roads. Bent was an expert in building roads; he had the heavy machinery necessary, and the current wages paid in the locality were agreed upon between the parties. Habrich had confidence in Bent, but retained the right to exercise control over the work, and at times did give orders to the men regarding the work. Bent was not on the premises to complete any certain piece of work. He was subject to discharge by Habrich. He was not there to work for any given length of time, and had no control over the details of the work, which it was within the power of Habrich to veto. The court said that there was nothing in the testimony that deprived Habrich of that power, and the question was not whether he exercised that power, but whether he had the right to exercise it. The facts in the instant case disclose the difference between the two cases.

We believe that the evidence in the case at bar is of such a nature that estoppel, as relied upon by appellee, cannot be sustained.

In analyzing the facts in the instant case, we can arrive at no other conclusion than that Mr. Lowe was an independent contractor and not an employee; that the relation of master and servant did not exist as between the parties, and the award made by the district court and judgment thereon should be and are reversed, and the cause dismissed.

REVERSED AND DISMISSED.