ALEX J. SNODGRASS, APPELLEE, V. CITY OF HOLDREGE, NEBRASKA, A MUNICIPAL CORPORATION, ET AL., APPELLANTS.

89 N. W. 2d 66

Filed March 28, 1958. No. 34335.

*Person & Dier,* for appellants.

*Anderson, Storms & Anderson,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

This is a workmen's compensation case. After hearing before one judge of the Nebraska Workmen's Compensation Court, the petition of plaintiff, Alex J. Snodgrass, was dismissed upon the ground that he was an independent contractor and not an employee of defendant, City of Holdrege, within the purview of the Workmen's Compensation Act. Thereafter, plaintiff waived a rehearing and appealed directly to the district court, as provided by section 48-181, R. R. S. 1943. After hearing in that court, a judgment was rendered which found that plaintiff was an employee of defendant city and entitled to an award which was granted, giving plaintiff compensation for temporary total disability from April 10, 1956, to July 16, 1956; compensation for partial disability from that time until December 1, 1956; and $259 for medical and hospital expenses incurred by plaintiff. Subsequently, defendants' motion for new trial was overruled, and they appealed, assigning and arguing in substance that the findings and award of the trial court were not supported by the evidence and law. We sustain the assignment.

The Ocean Accident and Guaranty Corporation, Limited, was made a party defendant because it was allegedly a compensation insurance carrier for defendant city, which said city will be hereinafter called defendant.

It is without dispute that plaintiff received a broken right leg by a falling tree limb on April 10, 1956, while he was trimming and removing certain trees from property owned by defendant. Also, the amount of compensation and expenses awarded as aforesaid were not questioned because the sole issue was and is whether plaintiff was an employee of defendant or an independent contractor. We conclude that plaintiff was an independent contractor.

In that connection, on an appeal to this court in a workmen's compensation case, the cause will be here considered and determined de novo upon the record. A compensable injury within the Workmen's Compensation Act is one caused by an accident to an employee arising out of and in the course of his employment, and in order to recover therefor the burden of proof is upon the plaintiff to establish by a preponderance of the evidence that personal injury was sustained by him as an employee of defendant by an accident arising out of and in the course of his employment. It has long been established also that an award of compensation under the Workmen's Compensation Act cannot be based on possibilities, probabilities, or speculative evidence. Also, the rule of liberal construction under the Workmen's Compensation Act applies to the law and not to the evidence to support a claim under the law, and does not dispense with the necessity that plaintiff shall prove his right to compensation within the rules above set forth nor permit a court to award compensation where the requisite proof is lacking. Feagins v. Carver, 162 Neb. 116, 75 N. W. 2d 379.

As early as Petrow & Giannou v. Shewan, 108 Neb. 466, 187 N. W. 940, this court concluded that plaintiff therein was an independent contractor. In doing so, it

was held that: "An independent contractor is generally distinguished from an employee as being a workman who contracts to do a particular piece of work according to his own method, and is not subject to the control of his employer, except as to the results of the work.

"The act of the employer in giving such directions as may be found necessary to secure compliance with the contract, according to the plan adopted by him and agreed upon between the parties, is not necessarily inconsistent with the existence of the status of his workman as an independent contractor."

In that opinion, citing numerous authorities, this court said: "The issue as to whether or not a workman is an employee, as distinguished from an independent contractor, is to be determined from all the facts in the case. There is no single test by which that determination can be made. An independent contractor is generally distinguished as being a workman who is independent in his employment; one who contracts to do a particular piece of work according to his own method, and is not subject to the control of his employer, except as to the results of his work. He is not in such a case a servant of his employer; nor can he be controlled by the employer in the manner of doing the work, except to the extent that the employer has the right to give such directions as may be found necessary to insure compliance with the contract." In that case, plaintiff was also to receive pay at an hourly rate, but the court concluded that such measure or method of payment was not a controlling criterion. The opinion gave particular significance to the fact that a substitute for plaintiff, who was obtained by plaintiff, completed the work without reporting to defendants or rendering a bill to them after he had finished the job, but plaintiff rendered a statement to defendants covering the entire cost of material and labor contributed by both plaintiff and his substitute, whereupon plaintiff was paid therefor and he paid his substitute. The opinion also pointed out that

it was not necessary that plaintiff personally perform the work, but that it was material that he should accomplish it according to plan by any method, manner, or means he pleased, with such help as plaintiff deemed necessary to employ, and without control of defendant except as to results of the work.

In Reeder v. Kimball Laundry, 129 Neb. 306, 261 N. W. 562, this court also concluded that plaintiff therein was an independent contractor. In doing so, it was held that: "An independent contractor is one who renders the service in the course of an independent occupation, representing the will of his employer only as to the result of the work, and not as to the means by which it is accomplished."

That opinion pointed out that there was no hard and fast rule by which to decide whether a claimant was an employee or an independent contractor, but that such relation must be determined from all the facts and circumstances in each particular case rather than from any particular feature of the employment. In that connection, the opinion said: " 'The true test of a "contractor" would seem to be, that he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. * * * In actual affairs an independent contractor generally pursues the business of contracting, enters into a contract with his employer to do a specified piece of work for a specific price, makes his own subcontracts, employs, controls, pays and discharges his own employees, furnishes his own material and directs and controls the execution of the work. Where these conditions concur there is, of course, no difficulty in determining his character as such. It is only where one or more of them is lacking that a question arises. The one indispensable element to his character as an independent contractor is that he must have contracted to do a specified work and have the right to control the mode

and manner of doing it.' 1 Shearman and Redfield, Law of Negligence (6th ed.) 395, sec. 164. * * *

"The plaintiff contends that the defendant, in instructing the plaintiff where to get the coal, where to put it and how to approach the coalbins, exercised such control as would make plaintiff an employee. In the case of Petrow & Giannou v. Shewan, 108 Neb. 466, this court said: 'The giving of such instructions by the defendants, however, would not be inconsistent with the relationship of the plaintiff toward them as an independent contractor, since, were he an independent contractor, the defendant would have had the right to instruct him as to what had to be done, so as to secure the fulfilment of their contract. This could be and was done in this case, without in any way interfering with the plaintiff's right to perform the contract in whatsoever manner or by what method he chose.' The evidence in this case clearly sustains the claim of the defendant that the instructions given were those necessary only to secure the fulfilment of the contract."

In Prescher v. Baker Ice Machine Co., 132 Neb. 648, 273 N. W. 48, this court said: "An independent contractor usually enters into a contract to do a specified piece of work for a specific price; makes his own subcontracts; employs, controls, pays and discharges his own employees; furnishes his own tools and materials; and directs and controls the execution of the work. As we said in the case of Reeder v. Kimball Laundry, 129 Neb. 306, 261 N. W. 562, where these conditions concur, there is no difficulty in determining his character as such. It is only when one or more of these conditions do not exist that a question arises.

"The one indispensable element to his character as an independent contractor is that he must have contracted to do a specified piece of work for a specific price. The agreement in the case at bar to unload one car of coal for 25 cents a ton provides this necessary element."

In addition, that opinion concluded that decedent was

an independent contractor, pointing out that he and his assistant fixed their own hours and controlled the method and means of doing the work; that after decedent's injury, his assistant engaged another to help him complete the job; and that defendant's assistance in spotting the carload of coal and the furnishing of certain tools and equipment in unloading same was not a controlling criterion because it was quite apparent that defendant was interested only in having the car of coal unloaded and not in the manner and means of its accomplishment.

Also, in Lowe v. Chicago Lumber Co., 135 Neb. 735, 283 N. W. 841, this court reaffirmed the holdings and conclusions in and quoted with approval from Petrow & Giannou v. Shewan, *supra,* Reeder v. Kimball Laundry, *supra,* and Prescher v. Baker Ice Machine Co., *supra.* In doing so, that opinion said: "In Potter v. Scotts Bluff County, 112 Neb. 318, 199 N. W. 507, the opinion at page 321 cites Barrett v. Selden-Breck Construction Co., 103 Neb. 850, 174 N. W. 866, wherein it was held: 'The right to supervise, control, and direct the work is one of the tests for determining whether a person is an independent contractor or an employee, but it is not the sole and only test. * * * A test is whether the contract requires the work to be done by the particular person contracting, or whether his personal services are not required, and any person whom he may employ may, under the agreement, do the job.' " See, also, Wilds v. Morehouse, 152 Neb. 749, 42 N. W. 2d 649, wherein this court reaffirmed the holdings and conclusions in Prescher v. Baker Ice Machine Co., *supra,* and Lowe v. Chicago Lumber Co., *supra,* and cited other supporting authorities.

Further, in Riggins v. Lincoln Tent & Awning Co., 143 Neb. 893, 11 N. W. 2d 810, this court concluded that the deduction by defendant of social security taxes from the earnings of plaintiff, or the payment of social security taxes thereon by defendant, was evidence tending to show that plaintiff was an employee and not an

independent contractor. On the other hand, if the record discloses that the contrary was true, then by analogy, of course, such facts would constitute evidence that plaintiff was an independent contractor and not an employee of defendant.

In the light of the foregoing authorities, we have examined the record de novo. As summarized, it fairly discloses the following: For many years plaintiff had been independently engaged in the business of tree trimming, tree removal, and lawn and shrub care in the city of Holdrege. He was an expert in that field. He offered such services to the public generally, including defendant, whenever it had need for such services, and plaintiff was available to render them. He rendered such services for many persons in Holdrege, and upon various occasions throughout the years he rendered such services for defendant, but he was never carried as an employee thereof. He had no downtown office, but carried on his business from his home. He had other persons in his employ whenever needed, and they were paid by plaintiff out of funds received from his customers, including defendant. Statements or claims for services rendered by him and those in his employ were handled in plaintiff's own name as a total amount due therefor from his customers, without including the names of those associated with him and in his employ. His method of billing defendant for services rendered it from time to time was the same as for services rendered his other customers. Several claims against defendant which appear in this record were usually submitted to it periodically at the end of the month or months during which he had rendered such services for defendant. Such claim would generally itemize the job or jobs he had performed, with the dates thereof, and state the charges therefor, which would be in a total amount due with no showing of hours worked, hourly rates, or names of other persons who might be working with or for him in performing the work. However, plaintiff

testified that such claims were made on the basis of $1.25 an hour by an agreement of long standing with defendant's water and light commissioner, but the total amounts charged did not generally total an amount due upon any such hourly basis. In that connection, plaintiff employed whatever help he might want or need, and they were paid by him and not by defendant. Also, such claims against defendant were handled by it just like the claims of all independent contractors, and at a different time and in a different manner than the claims of its employees. Further, plaintiff generally had no definite hours when he might perform work for defendant, and he would normally perform it when his schedule would permit, although on some occasions the city water and light commissioner would ask plaintiff if he could perform it at or within a certain time and ask for an estimate of the cost thereof.

There is some testimony adduced by plaintiff that he, his associate, and his employees could have quit or been discharged by defendant at any time without liability, but such evidence was a mere conclusion, and like any other indicia, that fact alone would not be controlling under all the facts and circumstances presented in this record.

Plaintiff usually furnished and used his own tools and equipment, although defendant had some tools and equipment which plaintiff could use if necessary. Sometimes plaintiff furnished materials or bought trees and shrubs for the city, then took them to his home, used them as his work progressed, and included a charge therefor when he eventually billed defendant.

Plaintiff was a qualified expert in the field of his particular business, and the details, method, manner, and means of performing work by him for defendant were left entirely in his hands with responsibility for completing the job, without supervision or control by defendant except to tell him where, when, and what was to be done.

Another man, named Adolph Bureman, was also engaged in the same type of business as plaintiff in Holdrege. He had too much work for one man, so on or about March 29, 1956, he "put it up to Alex (plaintiff) when I needed help he would help me and if he needed help he could call me and he says 'That's a fair 'nuf deal, we'll just go together' and that's the way we worked it" from that time on. It was then agreed between them that if Bureman worked on a job with plaintiff, or vice versa, he would turn it over to plaintiff to collect therefor in plaintiff's name, unless he was paid outright, and after plaintiff was paid, then Bureman would be paid by plaintiff out of such funds at $1.25 an hour.

On April 9, 1956, plaintiff and Bureman were working for one of their customers at Brewster Court in Holdrege when defendant's water and light commissioner came there and arranged with plaintiff to remove certain trees in order to make way for an electric power line across some of defendant's property. They went with the commissioner to the place where the trees were to be removed, and plaintiff was told what particular trees to remove and to employ such help as he might need to complete the job by tomorrow. Plaintiff then employed another man to assist him and Bureman, and the next morning, April 10, 1956, the three of them started the work of removing the trees. Neither the water and light commissioner nor any other employee of defendant was present that day while the trees were being removed by plaintiff, his associate, and the other man. As a matter of fact, defendant's water and light commissioner was out of the city that day when plaintiff was injured about 9:30 a. m. and was removed to a hospital by Bureman, where plaintiff remained for 4 days.

After plaintiff was removed to a hospital, Bureman and the other man working for plaintiff completed the job without solicitation or direction by defendant, although its water and light commissioner knew that Bure-

man was doing so. Several months thereafter, on September 4, 1956, plaintiff submitted a claim to defendant for the total charge for removal of the trees. In that connection, the city was not billed by the men who were working with or for plaintiff at the time of the accident and who completed the work, and neither the hours worked, nor the hourly rate, nor the names of plaintiff's associate or helper were shown on such claim, as was also true of claims for services theretofore performed by plaintiff for defendant.

While plaintiff was in the hospital, and thereafter at home, he continued to carry on and supervise his business and employees in the same manner as theretofore, except that while temporarily totally disabled he was not personally present during performance of any work for defendant and the many customers of his own and Bureman, who admittedly did all the work during such period with the help of other employees of plaintiff.

Social security taxes were never withheld from plaintiff's earnings or paid by defendant, as was regularly done with its employees. Rather, plaintiff had a social security number which was never given to the city, and he paid his own social security taxes as a "self-employed" person on his own earnings, including those from defendant, and he so reported same in his income tax returns. Also, defendant never withheld any of plaintiff's earnings for income tax purposes, as was regularly done with its employees, but all such earnings were reported by plaintiff in his income tax returns as a "self-employed" person. Further, none of plaintiff's earnings were ever included or reported through payroll channels of defendant for the purpose of determining workmen's compensation insurance premiums, as normal procedure required, and there is no competent evidence that defendant carried workmen's compensation insurance coverage for plaintiff. In that connection, plaintiff testified that defendant's water and light commissioner had told him several years ago that when-

ever he went to work for the city he "would be under the same coverage as any other city employee." However, plaintiff had no idea about when or where he had such a conversation. The water and light commissioner testified as a witness for plaintiff that several years ago the question came up whether plaintiff and others, particularly electricians, who were picked up to do emergency work, were covered by workmen's compensation insurance, and after talking with the person who sold such a policy to defendant (what answer such person gave is not disclosed), the witness told plaintiff "It was under my thought that he was covered * * * I told him that was my thoughts; right" but "I didn't check to see if they were covered with insurance when I would pick them up and then I dropped it at that, I dropped it until this occasion of Mr. Snodgrass came up and then there was the question that came up again."

We are convinced from this record that plaintiff was an independent contractor. In that connection, authorities relied upon by plaintiff are distinguishable upon the facts and law. Some of such authorities have already been distinguished in cases heretofore cited and discussed, and it would serve no useful purpose to discuss them again in this opinion. However, plaintiff relied primarily upon Schneider v. Village of Shickley, 156 Neb. 683, 57 N. W. 2d 527, a later case which should be discussed. In that case we held: "The contract under which service is performed and the performance thereunder determine the relationship between the contracting parties.

"On the issue as to whether a workman is an employee as distinguished from independent contractor, his relation to his employer should be determined from all of the facts, rather than from any particular feature of the employment or service."

In that opinion we concluded, citing authorities, that while the record contained some indicia that decedent was performing work for the village as an independent

contractor, we were nevertheless of the opinion that the indicia taken as a whole established that he was an employee of the village and performing services as such at the time he was accidentally killed. Therein decedent, a qualified and experienced electrician, had an oral agreement with the village that whenever he was contacted by anyone for the village and asked to perform some electrical work for the village, that he would respond as soon as convenient and perform any and all work in connection with the village's distribution system that the village might ask him to do. He was so employed instead of employing a full-time employee for that purpose. Such agreement had continuity, although the work he was to perform was neither fixed as to amount nor time. His agreement was not to perform a particular piece of work for a specific price within a specified time, and his compensation did not depend upon completion of a job. Also, after decedent's accident and death, no one was employed on his behalf to complete the work, but that was done by the village which, with small exceptions, furnished the material and supplies used in connection with the work to be performed. Therein the village expected decedent to personally perform the work although he could employ others to help him, and no definite time was fixed within which the work was to be performed.

On the other hand, the case at bar is distinguishable on the facts. Herein plaintiff was a qualified and expert tree trimmer and remover, but there was no agreement that he was to perform all of such work for the city that might be necessary, although he was generally called upon at different times to perform it and was compensated therefor by the city in the same manner as all independent contractors. Plaintiff was not required to personally perform the work, but he assumed and was given the responsibility of supervising and completing it by use of his own method, manner, and means, and he employed and paid his own associate and

helpers in order to do so. Herein plaintiff's agreement lacked comparable continuity. In other words, he was thereby required to do a particular piece of work according to his own method, manner, and means for a specific price within a specified time and was not subject to control of defendant except as to results of the work. Also, after plaintiff's accident, his associate and plaintiff's employee actually completed the job without employment therefor by the city to do so, and plaintiff was later compensated for the complete job, whereupon he paid his associate and employee.

While the record here contains some indicia that plaintiff was an employee, we are convinced that the facts and circumstances as a whole established that he was an independent contractor.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is reversed and the cause is dismissed. All costs are taxed to plaintiff.

REVERSED AND DISMISSED.

YEAGER, J., participating on briefs.