In the Matter of Drainage by James L. PERSONS, Steven A. Goeller, Perry G. Grotberg, and Margaret T. Grotberg, Section 23, the N ½ of the SW ¼ and the SW ¼ of the SW ¼ of Section 24, the N ½ of the NW ¼ and the W ½ of the NE ¼ of Section 26 and the E ½ of the E ½ of Section 26, all in Township 141 North, Range 58 West, Getchell Township, Barnes County, North Dakota.

Civ. No. 10262.

Supreme Court of North Dakota.

May 16, 1983.

Pancratz, Yuill, Wold, Johnson & Feder, Fargo, for appellants Robert Wittenberg and forty-nine other petitioners; argued by Robert A. Feder, Fargo.

Mikal Simonson, States Atty., Valley City, for appellant Barnes County Water Management Bd.

Sproul, Lenaburg, Fitzner & Walker, Valley City, for appellees; argued by Earl R. Pomeroy, Valley City.

Joseph J. Cichy, Asst. Atty. Gen., North Dakota State Water Com'n, Bismarck, amicus curiae.

PEDERSON, Justice.

This is an appeal by the Barnes County Water Resource District[1] and fifty landowners in Barnes County from a judgment of the district court reversing the Water Resource District's decision to close a drain constructed in 1969 by Persons. We affirm.

In 1979 fifty residents of Barnes County petitioned the Barnes County Water Resource District to close the drain, claiming it caused the ground water level to rise which lessened soil productivity and flooded their basements. The Water Resource District investigated the drain, pursuant to § 61–16–50, NDCC (repealed by 1981 Sess. Laws, Ch. 632, Sec. 11, current version appears at § 61–16.1–52), to determine whether or not Persons had complied with the permit requirements for drain construction enumerated in § 61–01–22, NDCC.[2]

---

1. At the time of this action, water resource districts were known as water management districts. The Legislature changed the name of the districts in 1981. 1981 N.D.Sess.Laws, Ch. 632. Rule 25(d), NDRCivP. For the purposes of this opinion, we will refer to the Barnes County Water Management District as the Water Resource District.

2. The current version of § 61–01–22, NDCC appears at § 61–16.1–41, NDCC.

Prior to its repeal in 1981, § 61–01–22, NDCC, required a person seeking to drain an area comprising eighty acres or more into a watercourse to first obtain a permit to drain. Drains constructed "under the supervision" of a state or federal agency, however, were exempt from the permit requirements of § 61–01–22, NDCC.

After its investigation, the Water Resource District determined that Persons' drainage area exceeded eighty acres and that the drain had been built without first securing a permit, contrary to § 61–01–22. Upon receiving notice that the drain had been illegally established, Persons demanded a hearing before the Water Resource District pursuant to § 61–16–50, NDCC.

At the hearing, Persons argued that a permit was unnecessary because the drain had been constructed under the supervision of two federal agencies, the Agricultural Stabilization and Conservation Service (ASCS) and the Soil Conservation Service (SCS). Evidence indicated that the ASCS helped fund the drainage project and that the SCS supervised construction of the drain. The Water Resource District concluded that the funding by the ASCS and the supervision by the SCS was not the type of "supervision" contemplated by § 61–01–22 and ordered the drain closed.

Persons appealed the Water Resource District's decision to the district court, pursuant to § 61–16–36 and § 61–16–39, NDCC (repealed by 1981 Sess.Laws, Ch. 632, Sec. 11, current versions appear at §§ 61–16.1–54 and 61–16.1–57, NDCC).[3] The court dismissed his appeal.[4] We reversed the court's dismissal on the ground that the procedures for summary judgment (Rule 56, NDRCivP) were not followed. *Matter of Persons,* 311 N.W.2d 919, 921 (N.D.1981). This court did not reach the merits of the legal arguments presented and remanded the case for further consideration.

On remand, the court in its findings of fact found that the drain was "constructed under the supervision of the SCS, a federal agency, and was excluded from the permit requirement." The court concluded that the Water Resource District's order to close the drain was invalid. It is from this judgment that the Water Resource District now appeals.

The sole issue presented is whether or not the federal involvement in this case exempted the drain from the permit requirements of § 61–01–22, NDCC.

The Water Resource District[5] argues that "supervision" as used in § 61–01–22 means that assistance provided by the state and federal agencies appearing in § 89–02–01–05, NDAC. Section 89–02–01–05 was promulgated in 1976, approximately seven years after the drain was built, and thus was not of contemporaneous construction. See *State v. Reich,* 298 N.W.2d 468, 471 (N.D.1980). Section 89–02–01–05, NDAC provides that:

"The provisions of section 89–02–01–03, . . . [requiring a permit] shall not apply to any drain constructed under the direct and comprehensive supervision of the federal or state agencies specified in this section. The only agencies deemed capable of such comprehensive supervision are the state water conservation commission, army corps of engineers, the soil conservation service, for projects constructed

---

**3.** Section 61–16–39, NDCC provided that appeals taken from an order or decision of a water management district "shall be heard and determined de novo."

**4.** After appealing the Water Resource District's decision to the district court, Persons filed a motion in limine to limit the issue before the court to whether or not he had complied with the drainage permit process of § 61–01–22. *Matter of Persons,* 311 N.W.2d 919, 921 (N.D. 1981). During the pretrial hearing, the parties stipulated that the drain exceeded 80 acres and was installed without a drainage permit. *Id.* When the court indicated that it did not believe the case fell within the statutory exemption for federal agencies, petitioners, the fifty landowners, moved and were granted dismissal of the action. *Id.*

**5.** An amicus curiae brief was filed on behalf of the State Engineer by counsel for the State Water Commission pursuant to Rule 29, NDRAppP. The State Engineer concurs in the arguments raised by the Water Resource District.

pursuant to the Watershed Protection and Flood Prevention Act [Pub.L. 83–566; 16 U.S.C. 1001], and the bureau of reclamation. However, these agencies shall notify the state engineer of any proposed drainage projects under their direct supervision during the planning stages." The Water Resource District suggests that because § 89–02–01–05 was "simply a written codification of the longstanding policy" of the State Water Commission, its provisions should provide guidance for this court in reaching its decision.

■■■ As this court has recently noted, the version of a statute in effect at the time the drainage system is built should apply to that case. See *North Dakota State Water Commission v. Cavalier County Water Resource District,* 332 N.W.2d 254 (N.D.1983). See also *Messer v. State Water Commission,* 332 N.W.2d 66 (N.D.1983). Section 89–02–01–05, NDAC was promulgated after the drain was constructed and is therefore immaterial to our consideration of this case.

We note, however, that § 61–01–22 (currently § 61–16.1–41, NDCC) was amended by the 1981 Legislature to provide the authority that the State Engineer sought in 1976 when he promulgated § 89–02–01–05, NDAC. Section 61–16.1–41 currently exempts drains constructed under the supervision of a state or federal agency "as determined by the state engineer." Thus, the potential problems anticipated by the State Engineer have since been corrected.

The Water Resource District argues that the SCS provided only "technical assistance" which did not constitute "supervision" as contemplated by § 61–01–22, NDCC. It also argues that the meaning of "supervision" is unclear, requiring this court to ascertain legislative intent before determining if the SCS supervised construction of the drain.

■■■ The primary purpose of statutory construction is to determine the intent of the Legislature. *Morton County v. Henke,* 308 N.W.2d 372, 375 (N.D.1981); *State v. Moore,* 286 N.W.2d 274 (N.D.1979). If a statute's language is ambiguous or of doubtful meaning, a court may consider certain extrinsic aids enumerated in § 1–02–39, NDCC, along with the language of the statute to ascertain legislative intent. *Apple Creek Tp. v. City of Bismarck,* 271 N.W.2d 583 (N.D.1978). Thus, in interpreting the meaning of "supervision," we must first determine if the word is ambiguous. *Morton County v. Henke, supra.*

Webster's Third New International Dictionary defines supervision as:

"the act, process, or occupation of supervising: direction, inspection, and critical evaluation: oversight . . . . "

Similar definitions can also be found in the cases annotated in 40A Words and Phrases, p. 349. See *e.g. Vantongeren v. Heffernan,* 5 Dak. 180, 188, 38 N.W. 52, 56 (1888) ("Webster says: supervision means 'to oversee for direction; to superintend; to inspect' . . ."). See also *Lowe v. Chicago Lumber Co. of Omaha,* 135 Neb. 735, 741, 283 N.W. 841, 844 (1939); accord, *Continental Casualty Company v. Borthwick,* 177 So.2d 687, 689 (Fla.Dist.Ct.App.1965) ("To 'supervise' means to oversee for direction; to inspect with authority."); Black's Law Dictionary 1290 (5th ed. 1979).

Although the proffered definitions of supervision may be broad, the term is not imprecise or unclear. We do agree that as used in § 61–01–22, the word "supervision" requires greater involvement in a drainage project than rendering mere technical assistance.

The parties in this case agree that "supervision" generally means to oversee, inspect, or manage. They disagree, however, with whether or not the federal involvement in this case amounts to "supervision."

The SCS's involvement included the following:

(1) determining the feasibility of draining the land;

(2) preparing the drain design;

(3) having the proposed drainage system reviewed by the area engineer for the SCS;

(4) determining the effects of the drain on downstream landowners;

(5) staking the location and grade of the drain;

(6) overseeing the construction of the project; and

(7) examining the completed project to insure that it conformed to the design specifications.

 The SCS's involvement continued throughout completion of the drainage project. It participated in the initial planning of the drainage project, overseeing construction of the drain, and reviewing the completed project. The district court found that the SCS "supervised" the drainage project and thus no permit was required.[6] We conclude that the evidence supports a finding that the SCS provided more than mere technical assistance and "supervised" construction of the drain; therefore, the finding was not clearly erroneous pursuant to Rule 52(a), NDRCivP. Accordingly, the judgment is affirmed.

ERICKSTAD, C.J., VANDE WALLE and SAND, JJ., and MUGGLI, Surrogate Judge, concur.

MUGGLI, Surrogate Judge, sitting in place of PAULSON, J., disqualified.

---

**6.** The court both found and concluded that the SCS "supervised" construction of the drain and thus treated the issue as a mixed question of law and fact. Our conclusion would be the same regardless of whether the question was treated as one of law or fact.